BENJAMIN AND WILLIAM RICHARDSON *vs.* STEPHEN JONES.—*December*, 1831.

The policy of the law forbids that a trustee should become a purchaser, directly or indirectly, at his own sale; and if he does, such sale may, and will be set aside, on the proper and reasonable application of the parties interested.

The rule, that a trustee shall not become a purchaser at his own sale of the trust property, was not adopted in favor of trustees, but for the protection of the interest of the *cestui que trust*.

Chancery will not interpose and set aside a sale made by a trustee, to himself, or his agent, either upon the application of the trustee or the agent.

An order requiring the principal obligor, and the sureties in a bond, given for the purchase money of land sold by a trustee of the Court of Chancery, to pay such purchase money to the trustee, or bring it into court, or show cause to the contrary by a given day, is purely interlocutory, settles nothing between the parties, and is not the subject of an appeal.

Where a sale is made under a decree, or order in Chancery, and *no bond or security* is given for the payment of the purchase money, the purchaser may be compelled to complete his purchase, by an order on him in a summary way, to pay or bring the money into court.

But when a bond is given to the trustee for the purchase money, under an order of sale from Chancery, requiring a bond to be given, and the sale has been ratified, the purchaser and his sureties cannot be compelled to pay the bond in a summary way, by an order from Chancery. This constitutes a legal contract to be enforced at law.

No action at law will lie to enforce a decree in Chancery, within the territorial jurisdiction of the Court of Chancery. That court enforces its own decrees.

An order of the Court of Chancery, ratifying a trustee's sale where no bond has been given, or the sale is for cash, is considered as amounting to a decree for the payment of the purchase money, and if that court could not enforce the execution of it, it could not be enforced at all. The trustee cannot, before ratification, which is the completion of the contract, claim to enforce it in equity, nor after ratification can he sue upon it at law.

Where a bond has been given in conformity to the order of sale, the ratification is an adoption of the bond only.

Where a purchaser at a trustee's sale gave his bond in conformity with the order of sale, but afterwards, by fraud, defeated the action at law brought upon his bond, he may still be made responsible in equity for the purchase money, upon a bill shewing his improper conduct, though in the mean while limitations may have barred the bond at law.

APPEAL from the Court of Chancery.

In the year 1816, *Abraham Jarrett* filed a bill in the Court of Chancery, setting forth that he sold certain tracts of land called *Scott's Hopewell*, and *Beall's Camp*, to *Arthur Rider*, in the year 1811; that *Rider* paid only part of the purchase money, and took possession of the land; that *Rider* died intestate, in the year 1814, leaving *Arthur Rider, Jr.* and *Sarah Rider*, since intermarried with *William Byrnes*, his heirs at law; that letters of administration were granted to *Arthur Rider, Jr.;* that the elder *Rider* was indebted to the complainant on other accounts, and his personal estate was insufficient to pay his debts. Prayer for *subpœna* to the children aforesaid and *William Byrnes*, and that the land aforesaid be sold for the payment of complainant's claim. The defendant answered the bill, confessed the claims, and consented to a decree. On the 8th January, 1817, a decree passed for the

sale of the land, and *Samuel Richardson* was appointed
trustee.   On 21st January, 1817, the trustee gave bond for
his trust, with *Benjamin G. Jones* and *William Richardson*
as his securities. On the 25th February, 1817, *Samuel Rich-
ardson,* as trustee, reported a sale to the Chancellor, of the
premises mentioned in the bill, to *Benjamin Richardson,* as
the highest bidder, for $995 50.   On the 6th March, 1817,
this sale was confirmed *nisi* the 15th May ensuing, accord-
ing to the usual terms.   On the 4th November, 1817, proof
of publication of the order of ratification *nisi* was filed.
The trustee filed the bond of *Benjamin Richardson, Abra-
ham Jarrett* and *William Richardson,* dated 25th February,
1817, to him, as trustee aforesaid, for the amount of the pur-
chase money, conditioned to be paid on the 25th February,
1818.   On the 15th July, 1818, *Abraham Jarrett* filed a pe-
tition in the Chancery Court suggesting the death of *Sam-
uel Richardson,* the trustee, before he had completed the
duties of his trust.   The Chancellor thereupon appointed
*Robert Richardson* trustee.   In July, 1822, *Jarrett* filed.
another petition, suggesting that *Robert Richardson* would
not act as trustee, whereupon the Chancellor appointed
*Stephen Jones* to complete the said trust.   *Jones* bonded on
the 28th November, 1822, which was approved on the 7th
January, 1823.   On the 29th August, 1828, the sale made
and reported by *Samuel Richardson,* was finally ratified by
the Chancellor.   On the 31st March, 1829, *Benjamin Rich-
ardson* filed a petition in the cause aforesaid, setting forth the
bill, answer and decree aforesaid, and alleged that, " as the
day appointed for the sale approached, the said *Samuel Rich-
ardson* and *Abraham Jarrett* came to your petitioner, and
informed him they had come to a determination to buy said
land for their own use, and begged your petitioner to act as
their bidder at the sale ; they informing your petitioner, at
the same time, that it was necessary when a trustee bought
in property for himself on speculation, to have a third person
to bid it off for him, and assigned as a reason, that he must
make the deed, and he could not deed to himself.   Your pe-

titioner refused to do this, saying, he did not understand the business, and knew nothing about the Chancery Court; but, on the said trustee's urgent importunity, and his positive assurance that it was all right, and that the trustee, and *A. Jarrett*, would pay the Chancellor for the land, he consented to oblige them, to bid in said land, and afterwards on their like assurance, and that it was all innocent matter and form, and that he must bond as the nominal purchaser, he consented to bond for said property in the manner and for the sum the trustee pointed out to him.    The petition further stated, that immediately after the sale, the said trustee and *Jarrett*, entered into the exclusive possession of the land, and on the 22d April, 1817, they began to sell off said land as proprietors thereof; they sold a part to one *Wallace*, as will appear by a written receipt of *Jarrett*, hereafter to be exhibited.    In the winter after *Samuel Richardson's* death, the said *Abraham Jarrett* took the surveyor of the county, and had the land laid off into three parts.    In December of the same year, the petitioner was induced by *Jarrett* to give his consent, that he, *Jarrett*, should sell said land in his own name and the name of petitioner, but with the perfect understanding, that he, the petitioner, had no sort of interest therein, and was only consenting to have his name used as it was used in the bid.    The said *Jarrett* sold the first part to *Benjamin Gibson*, the second to *James Wallace* for $335 50, and the third part to *Samuel Bradford* for $678, and took obligations to himself, *Jarrett*, and this petitioner.    A bond of *Wallace*, and *Bradford's* note were handed to the petitioner, but he has never received a cent on them, he has no claim on them, and wishes to deliver them to whomsoever the court may direct.    The petition then shows the appointment of *Jones*, as trustee, and alleges that by the procurement of *Jarrett*, *Jones* caused a suit at law to be instituted in *Harford* County Court, upon petitioner's bond, given under the circumstances aforesaid ; that before the said suits came to trial, the widow and administratrix of *Samuel Richardson*, feeling and knowing the unjust and fraudulent nature of the

same, gave a receipt in full, as the readiest means of arrest-
ing so wrongful a procedure, and sheilding an innocent de-
defendant.    On the production of the receipt at the trial,
the said suit was non-suited.    The petition also alleged,
that the said *Jarrett* received much money from his own
sales of the said land, and that after *Jarrett* had sold said
land in parcels, as aforesaid, and received the notes and bonds
aforesaid, for the purchase money, he caused several suits at
law to be brought on them in his own name, and that of the
petitioner; that the petitioner knowing that he had no rightful
demand against the makers of said notes and bonds, had those
suits struck off the docket.  And that the said *Jarrett* thus be-
ing frustrated in all his attempts to reap the fruits of his fraud-
ulent collusion with the said *Samuel,* and fraudulent imposi-
tion on this petitioner, resolved on another course, and on
the 7th February, 1825, caused the said *Stephen Jones* to
file a bill on the equity side of *Harford* County Court, to
compel the payment of said bond.    To this bill your peti-
tioner filed his answer, as did his secuities on the bond, set-
ting forth fully the circumstances of fraud aforesaid; a com-
mission issued, and your petitioner, upon a very full inquiry
into all the circumstances, and producing proof of them, was
enabled to satisfy the court of the iniquity and injustice of
the suit.    At August term, 1828, the cause was final-
ly argued, and the said court thereafter dismissed the
said bill with costs.  All these proceedings will be exhibited,
and are prayed to be considered as part of this petition.
Your petitioner also shows, that after the argument of the
cause aforesaid, and before a decision of it, the counsel of
the complainant *(Jones,)* applied to the Chancellor, procured
a final ratification of the sale, and laid it before the judges of
*Harford* County Court, before the decree of dismissal afore-
said was pronounced.    Your petitioner further shews, that
notwithstanding all the proceedings aforesaid, and notwith-
standing the whole matter has been solemnly passed on
after a full investigation by a tribunal of the complainant's
(*Jones*) own choosing; your petitioner is now menaced

with an application for an attachment, or some other compulsory process, to compel your petitioner and his sureties to pay the amount of the bond aforesaid. PRAYER to be protected therefrom by order of the Court of Chancery, that his bond may be given up to be cancelled; that the said *Stephen Jones* may report to this court on the matter of this petition and his trust; that notice may be given to the parties in the original suit, viz: *Abraham Jarrett, Arthur Rider, Jr. William Byrnes,* and *Sarah,* his wife, to answer the petition, and for general relief, &c.

*Arthur Rider* answered the petition of *Benjamin Richardson,* and stated, that with many of the facts of the petition he was entirely unacquainted, and consequently could neither confess nor deny them; that he now is, and has long since, been entirely convinced that there was a fraudulent collusion between *Abraham Jarrett* and the late *Samuel Richardson,* in the sale of the land mentioned in the petition, and unites in the prayer, that the same may be set aside; that he has a brother, *Richard Rider,* who resides in *England,* but who was not a party to the original bill, who is one of the children and heirs at law of *Arthur Rider,* deceased :—prayer to be dismissed without costs.

*William Byrnes* and wife also answered the petition, declaring their ignorance of most of the facts, and belief in a fraudulent combination between *A. Jarrett* and *S. Richardson,* to sell *Arthur Rider's* land, and purchase it themselves, whereby the heirs of *Rider* would be injured :—prayer to be dismissed without costs, &c.

*Abraham Jarrett's* answers to the petition aforesaid—alleged that at the time *Samuel Richardson,* the original trustee, was about to sell *Rider's* land, he came to this respondent, and expressed a wish to buy the said land, but alleged, he entertained some apprehension that he might not be able to pay for it when the purchase money became due, and solicited this respondent to join him in the purchase, assuring this respondent that he would ultimately take the whole of it, but that he wished the respondent to join him in the pur-

chase only to assist him in paying for said land in the first instance; that he agreed to join said *Samuel,* who informed him he had procured his brother, *Benjamin Richardson,* to bid in said land, who bought it, being the highest bidder. That respondent felt bound to aid *Samuel* in paying for the land; that *Samuel* entered into the full and exclusive possession thereof, and sold a few acres thereof to *James Wallace,* for which *Wallace* paid this respondent and *Samuel,* by transferring a claim he had upon another person. That *Samuel* soon after died, leaving his affairs out of order, and respondent being importuned by *Benjamin R.,* who had now become uneasy as well for himself, who had bonded as purchaser, as for his deceased brother's wife and children, suggested to said *Benjamin,* that they might raise the purchase money by a re-sale of the land; he assented, and it was agreed that the land should be re-sold at public auction, by respondent and petitioner—to that end the land was divided and sold as alleged by the petitioner, in three parcels; one to *Samuel Bradford,* who bought, as this respondent understood, for himself and for *William Richardson,* the security of the petitioner; another parcel was sold to *Wallace;* another to *Benjamin Gibson.* After the sale, and the purchasers had given bond, at least *Bradford* and *Wallace,* and the said *Bradford* had permitted the said *William Richardson,* who was a party to the bond for the purchase money, to take and purchase for his own separate use, in consequence thereof the said *William R.* entered into the possession of said land. When the purchase money became due, the respondent, who held the bonds for the same in his possession, at the request of the petitioner, instituted suits in *Harford* County Court, against said *Bradford* and *William R.,* and hearing no complaint or objection to his recovery, expected at the trial term, to obtain a judgment, when, to his astonishment, the said petitioner, who was a co-obligee in said bonds, came into court and had the suits therein discontinued. The respondent then informed said petitioner, if he intended to claim the bonds for the purchase money

arising from the *second* sale, he must expect to pay the original purchase money, and the said petitioner desired to have said bonds, which were delivered to him. Respondent then declined any further interference with said land, and applied for the appointment of *Stephen Jones* as trustee, to complete original trust. That suit was brought upon the bond for the first sale, and defeated by collusion, as stated in the petition; that the trustee *(Jones)* then filed a bill on the equity side of *Harford* County Court, and at the hearing thereof, it was objected by the said petitioner, that said court had no jurisdiction, and the cause properly belonged to the Court of Chancery, and that the said sale had not been finally ratified, and the bill aforesaid was then dismissed upon these grounds, and not upon the merits; that after said petitioner had maifested his intention of being considered the real purchaser by the course he pursued, respondent assigned his claim on the premises and has now no interest; and he denies that *Jones* has acted except in the course of his duty, and in good faith. That since the sale in 1819, *William Richardson* and *James Wallace* have been in the possession of the land sold by them, enjoyed its rents and profits, cut a large quantity of wood and timber, and diminished its value one-half, and that other persons than respondent are interested in the sale of said land; that the second sale was made at the request of *Benjamin* and *William Richardson*, and would have paid the original claim but for the misconduct aforesaid, &c.

*Stephen Jones,* the trustee, at the same time reported to the Chancellor, that he ascertained what the records of the Court of Chancery showed to have been done prior to his appointment, and not knowing any thing concerning the circumstances attending said sale, and believing he had nothing to do but to collect the purchase money, instituted a suit on the bond; at the trial term, under a plea of payment, the defendant produced the receipt of the administratrix of the former trustee, in whose name the suit was brought, for the use of the trustee; upon which your trus-

tee was compelled to non-pros said suit. Your trustee, believing said receipt to be fabricated and ante-dated, filed a bill on the equity side of *Harford* County Court—his action at law, at this time, being gone, by one of the sureties in said bond becoming, on the death of the said administratrix, (which had then occured) the administrator d. b. n. of the former trustee, to whom said bond was given ; and by the answers filed to the bill, your trustee was first informed of the alleged circumstances attending the original sale. That bill was objected to at the hearing, on the ground of want of jurisdiction, and the sale not being finally ratified ; and therefore was dismissed as he has understood. The report then states the possession, use and enjoyment of the land, after the first and second sales, as alleged in *Jarrett's* answer, and denies all collusion. *Prayer* that the sale may not be set aside, and that *Benjamin Richardson* and his sureties, *William R.* and *Abraham J.* may be ordered to pay the original purchase money, according to the condition of the bond given therefor, which is herewith exhibited, &c.

The bill on the equity side of *Harford* County Court, referred to in the proceedings aforesaid, was filed by *Stephen Jones*, on the 7th February, 1825. It set forth the proceedings in the original cause as they appeared in the Court of Chancery, except the order of final ratification. The suit at law by him, against the parties in the original bond, in *Harford* County Court, and the special manner in which it was defeated by fraud, as hereinbefore stated, and that no money had been paid on the original bond ; that the receipt which bore date in 1822, was, in fact, given in 1824, and procured by *B.* and *W. R.* It also alleged the death of *Samuel's* administratrix, and the appointment of *William* as his administrator d. b. n., and the impediment which that appointment interposed at law. *Prayer* that *Benjamin R.*, *William R.*, and *Abraham Jarrett*, may be decreed to pay and satisfy the sum of money mentioned in the condition of the bond, given as aforesaid, with the interest thereon,

and costs of the non-suit, which the said *Jones* has paid, and for general relief, &c.

At June term, 1825, *Abraham Jarrett*, filed his answer to *Jones*' bill, admitting the proceedings in Chancery, and denying all knowledge of the transactions between *Benjamin* and the administratrix of *Samuel R.*, on the receipt aforesaid; that, being surety, he gave no attention to the suit which was defended by the other parties thereto, and knows nothing of that suit, save what the record discloses. Consents to any decree which the Chancellor thinks proper to pass.

At March term, 1827, *Benjamin Richardson* answered the bill of *Stephen Jones*, admitting the proceedings in Chancery, and charging, that *Jarrett* and *Samuel Richardson* combined to become the joint purchasers of the land aforesaid. The answer then set forth the circumstances of the application to the respondent, as mentioned in his petition to the Chancellor, in this cause. His purchase of the land; his giving bond; the suit in *Harford* County at law, upon this bond and its defeat, by the mode stated in the bill; and all the circumstances of the second sale, and that he defeated the suits on the bonds given for the second sale, because the obligors had never in fact, delivered them to *Jarrett*, but that *Jarrett* took them from a table where they lay, while in conversation with the said obligors, about the title of the said land; that *Jarrett* is the sole mover of the whole affair, and the only person interested in the money sought to be recovered from him. *Prayer* to have the original bond cancelled, &c.

*William Richardson's* answer was similar to *Benjamin's*.

The evidence taken under the bill in *Harford* Court, established the second sale. That *William Richardson*, since 1819, has been, and still is, in possession of a considerable portion of the land; that large quantities of wood, from 2 to 450 cords, had been cut down and removed from the land since the first sale; that *Samuel Richardson*, from the first, claimed the purchase by *Benjamin*, as for his *Samuel's* ac-

count, or jointly with *Jarrett.* That the land, shortly prior to the second sale, was surveyed by order of *Jarrett.* The following receipt of *Jarrett's* was also proved.

"Received, 29th December, 1818, of *James Wallace,* Esq. an order on *Z. O. Bond,* accepted on the 29th November, 1817, for $70, which sum is in full payment for a lot of land, being part of *Scott's Hopewell,* supposed to contain 4 or 5 acres, as per contract of sale entered into by *Abraham Jarrett, Samuel Richardson* and the said *James Wallace,* 22d April, 1817; and which lot of land is part of the same purchased by *Benjamin Richardson,* at the sale made by *Samuel Richardson* as trustee, under a decree of the Chancellor, and which was purchased in trust by the said *Benjamin Richardson* for the said *Abraham Jarrett* and *Samuel Richardson ;* and on the settlement of that sale and business, this sum is to be accounted for by the said *Abraham Jarrett* to the said *Benjamin Richardson,* as part of the money coming to him out of said sale.—*Abraham Jarrett.*"

At the final hearing, on the 2d Monday of August, 1828, *Harford* County Court passed the following decree : "In this cause it appears to the court that the complainant is not entitled to the relief prayed by his bill. It is thereupon adjudged and decreed that the same be dismissed with costs. *Charles W. Hanson, Thomas Kell.*"

The evidence taken upon the petition in Chancery, went to establish the fact that the land had been stripped of nearly all its wood since the first sale, and had been chiefly in the possession and cultivation of *William Richardson* and his tenants. The proof in the equity cause in *Harford,* was read in this case by consent.

BLAND, Chancellor, on the 9th July, 1829, passed the following order :

The matter of the petition of *Benjamin R.* filed in this case, standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered. The bill states that the plaintiff sold to

*Arthur Rider*, who is since dead, intestate, a tract of land, and that a large balance of the purchase money still remains unpaid; that the late *Arthur Rider* became indebted to the plaintiff, on other accounts, which sums also remain unpaid, and that the late *Arthur Rider's* personal estate is insufficient to pay his debts. His administrators and heirs are made defendants; and by their answer, they substantially admit the truth of the allegations of the bill. Upon which, by assent of the parties, on the 18th of January, 1817, a decree was passed, in the usual form, directing the real estate of the late *Arthur Rider* to be sold, and appointing *Samuel R.* trustee, to make the sale, who reported that he had, on the 25th of February, 1817, sold the lands to *Benjamin R.;* upon which, on the 6th of March, 1817, an order was passed that the sale be ratified, unless cause be shown to the contrary, before the 15th day of May then next. *Samuel R.* the trustee, died in the month of February, 1818, and by an order passed on the 18th of July, 1822, the present trustee, *Stephen Jones,* was appointed to complete the trust, after which no further proceedings were had in this court, until *the 29th of August,* 1828, when the sale *was absolutely ratified and confirmed.*

If the plaintiff had asked no more than the payment of the balance of the purchase, and to have his equitable lien enforced for that purpose, he would have assumed the position, and stood upon the ground of an equitable mortgagee, claiming the benefit of specific lien, and consequently the insufficiency of his deceased debtor's personal estate, would have formed no essential part of the foundation of his claim to relief. *Ellicott vs. Warfield, July,* 1829. But the plaintiff has introduced into his bill another claim against the intestate, in addition to that of the purchase money, for which he can only be allowed to obtain satisfaction out of the realty, on the ground of the personal estate of his deceased debtor being deficient. This claim gives to this suit, the nature and character of a creditor's bill, and in such a bill, a plaintiff may introduce all his claims.

for the payment of money, however various, even although some may be made in his own right, and others in representative character of executor and administrator; considering this as a creditor's bill, the decree itself should have directed the trustee to give notice to the creditors of the *late Arthur Rider*, to bring in their claims. It is not however, now too late to obtain an order for that purpose, since the trustee cannot be authorised to distribute in payment, any of the proceeds of sale, until the creditors of the deceased have been thus notified, and an account has been stated by the auditor, and confirmed by the court. It is certainly now too late, especially in this way, to inquire into the regularity of the decree of the 8th of January, 1817. I therefore put aside every thing upon that head, which was so much urged in the argument. The petitioner, *Benjamin R.* admits that he became the purchaser, as reported by the trustee, and that he gave bond for the payment of the purchase money, with *A. J.* and *W. R.* as his sureties, but he avers that he consented thus to be named and reported as the purchaser, with no view whatever to his own benefit, but for the sole and exclusive use and behoof of *Abraham J.* and the late trustee, *S. R.*, at whose express solicitation, and in whose behalf alone, he acted, and consented to be represented as the purchaser, because, as was distinctly understood and stated at the time, the trustee, *Samuel*, could not himself become a purchaser at his own sale; and such appears to have been the fact and truth of the matter. There was nothing improper in *Jarrett's* becoming a purchaser. But a sale, however apparently fair, or in whatever way covered to a trustee, is forbidden by the policy of the law; and therefore, had this sale been objected to on that ground, within any reasonable time, it certainly could not have been ratified. But I know of no instance in which a mere *particeps fraudis*, one who has lent himself as a cover to a sale to the trustee himself, has been allowed to come in, and have it vacated, merely because of its having been in fact made to the trustee, and on

that ground alone. Looking to all the circumstances of this case ; the time that has been suffered to elapse,—the good price for which the land has been sold, and the waste and injury it has since undergone, I should doubt the propriety of simply rescinding this sale, even at the instance and special prayer of the defendants themselves. But I can see no good reason why the petitioner, *B. R.* should have it vacated, or why he should be released from the responsibility to which he voluntarily, and with a perfect knowledge of all circumstances, has subjected himself. In allowing himself to be reported, and his bonds to be returned here, as the purchaser, when, in truth, he was not the purchaser, he practiced an imposition upon this court ; and in availing himself of the form of the action at common law, in the name of the administratrix of the late trustee, *Samuel Richardson,* because his bond had been so made payable, to procure a receipt in full for the purchase money from the nominal plaintiff in that action, when, in truth, he had paid no part of it, for the purpose of preventing a recovery, he practiced a fraud upon the agent of the court, and an imposition upon the court of common law. Surely he who comes here openly avowing all this, ought to be allowed again to shore by justice, to baffle the court, and to scoff at the law. Under all such circumstances, *to set aside this sale* would be to allow a man openly to profit by his own wrong ; it would be to make that sound general rule of equity, which prohibits a trustee from becoming a purchaser at his own sale, a direct instrument of gross fraud. Whereupon, it is ordered, that the petition of *Benjamin Richardson* be, and the same is hereby dismissed with costs.

And upon the report and representation of the said trustee, it is further ordered, that the said *B. R.* the purchaser, and *A. J.* and *W. R.* his sureties, forthwith pay to the said trustee, or bring into this court, the whole amount of the said purchase money now due, together with legal interest thereon, or shew good cause to the contrary, on the first day of September next. Provided a copy of this order be served

on the said *B.*, *A.* and *W.* on or before the last day of this month. And it is further ordered, that the said trustee give notice to the creditors of the said late *Arthur Rider*, by causing a copy of the following order to be published in some newspaper, twice a week for three successive weeks, before the 20th day of August next: and that the creditors of the late *Arthur Rider* file their claims, together with the vouchers thereof, in the chancery office, on or before the 20th day of November next."

From which order the said *B. and W. R.* on the 17th day of August, 1829, prayed this appeal.

The cause came on to be argued before Buchanan, Ch. J., Archer, and Dorsey, J.

*Speed*, for the appellants, contended,

That the proof showed the sale of the property mentioned in the proceedings, was made by the trustee, *Samuel Richardson*, to himself, and *Abraham Jarrett* the complainant in the bill, through the agency of the appellant, *Benjamin Richardson*: that the trustee, in pursuance of that sale, took possession of the property, and retained it until his death: that *Jarrett*, after the death of the trustee, entered and kept possession of the same property until the second sale mentioned in the proceedings: that the petitioner, who seeks relief in this case, never had possession: that the sale was not finally ratified until the 28th of August, 1828: that *Jarrett* had sold his interest in the proceeds of the property, and that the purchaser from him was not a party: that *William Richardson*, one of the appellants, has improved the land, and greatly increased it in value, since the sale. These positions of fact, he contended, were established by the evidence in the cause. He said the sale made by the trustee to himself, through an agent, was void, not voidable; and that the heirs of *Rider*, the original defendant, never having acquiesced in that sale, it was void,

Vol. III.—23

Richardson *vs.* Jones.—1831.

and gave the present trustee, *Jones*, no right to claim the purchase money upon that sale. That the fact of the sale being public, a fair price being obtained, and even if the sale had been ratified in season, would not alter the rule of the Chancery Court. *State vs. Reed*, 4 *Harr. and McHen.* 11. *Davis vs. Simpson*, 5 *Harr. and Johns.* 147. *Sinstack vs. Harding*, 4 *Harr. and Johns.* 186. *Davou vs. Fanning*, 2 *Johns. Chan. Rep.* 252. He contended there had been no acquiescence in the original sale, on the part of the defendants: that the first trustee, and the complainant, had managed the property among themselves: that for five years there had been no trustee, in fact, and the original parties never notified of the fraud, and therefore never in a situation, nor called upon to acquiesce: that this petitioner was not too late to contest the validity of his purchase with *Jarrett:* he had always opposed the claim, whenever *Jarrett* attempted to enforce it against him, and had never acquiesced in it: that for these reasons, the decree of the Chancellor should be reversed. To sustain it, would only permit *Jarrett* to reap the benefit of a legal fraud, upon the practice and proceedings of the court, and that in fact, he was the only party in interest before the court, as complainant. The trustee, *Jones*, was acting for his benefit, or of those who took the demand, subject to subsisting equities against him.

*Taney*, (Attorney General U. S.) *Gill*, and *Alexander*, for the appellees, contended, that as to *William Richardson's* appeal, it must be dismissed. In relation to him, the decree was a mere order to pay the purchase money into court by a given day, or shew cause to the contrary, on or before that day. Such an order settled no right in relation to him. Upon showing cause, he might avail himself of any meritorious, or even technical objection to his paying the money. As to the effect of such orders, they cited, *Anderson vs. Foulke*, 2 *Harr. and Gill*, 373. Upon the question of appeal from such an order, at once, upon its being passed,

they cited, *Hagthorp vs. Hook*, 1 *Gill and Johns.* 270. *Daniels vs. Taggart*, *Ib.* 311. The only inquiry here is, whether the chancellor had *prima facie* grounds for passing such an order. We contend he had. The report of *Jones*, the trustee, discloses, that to the bond for the purchase money in this case, *William Richardson* was a party obligor. He was also the administrator *d. b. n.* of *Samuel Richardson*, the first trustee. Under such circumstances, an action at law upon, which must necessarily be in the name of the appellant, could not be resorted to. Even if the action could have been maintained, he could not have been induced to sue himself. A resort to equity was manifestly necessary. The facts fully justified the Chancellor's order. Although it is insisted here, that *William Richardson's* appeal must be dismissed, yet the only motive for dismissing it, would be to prosecute the Chancellor's order. It has been objected here, that the Chancellor could not enforce that order, and compel the appellant, *William R.* to pay the bond for which he is surety, by attachment, &c.; that over a mere surety he has no jurisdiction; that the bond is his contract, and he cannot compel the payment of that; the remedy is at law: we answer to that, our remedy at law is gone; the position which *W. R.* now occupies, as *ad. d. b. n.* of the first trustee, denies us that right. Upon general principles, then, we may resort to Chancery to counteract the effect of the appellant's own proceedings, and obtain relief, which we could not procure in a court of law.

The remedy which we seek against *W. R.* will also prevent litigation. His contract shews that he was covenanting with an officer of the Court of Chancery; his bond refers to the original proceedings in this cause, the sale under the authority of the court. The object of Chancery, is to give relief; to grant full and complete redress. The original complaint was within its jurisdiction. This incidental right, upon which granting relief at last depends, the right of enforcing its contracts, ought not to be refused: that would strip the court of its natural and appropriate

power : to refuse it, would be to place the court at the feet of other tribunals. Convenience sanctions this mode of redress. There is no fact in this case, which requires the intervention of a jury. The sealed contract of the party admits the debt. The relief to which *W. R.* is entitled, if any, is in equity, and that must be the case with all securities who occupy his situation. What sound principle, then, denies jurisdiction to the court to enforce this contract, and thus put an end to litigation ? The practice under *English* chancery sales, furnishes no light here ; nor do we know of any instance in which our Court of Chancery has actually exercised the power. But considering it fit and reasonable that the court should possess it, we claim it for that tribunal, as essential to that forum which grants full relief, by giving a complainant the fruits of his demand, the money. 2. We contend that a party who purchases at a trustee's sale, with a full knowledge of what he is doing, cannot have that sale set aside. That if the same party so far affirms the sale, as to give his bond with security for the purchase money, that is an additional reason, why he should not have the power to set the sale aside. If such a power exists in the purchaser, while all the parties to a cause are satisfied, a court of equity never can be certain that a sale has been made. There can be no such general rule ; there must be some peculiar equity to sanction such an application; some defect of title, some misrepresentation, some fraud ; a case in which a purchaser bids in one thing, and is about to get something else. The pretended equity here is, that *William Richardson* purchased for another, and not for himself.—That his principal was the trustee, whose duty it was to make the sale. That as a trustee cannot buy, so, neither can he employ an agent to buy for him. We do not deny, that as a general position, it is true that a trustee cannot, and ought not to purchase at his own sale : good policy forbids such an act. He is not to be tempted to turn his duty to his own profit. The object and sole design of this rule is to protect the *cestui que trusts.* If they do not complain, the law presumes

that there is no ground for complaint; for though the law for-
bids a trustee to buy at his own sale, it is yet true, that he
may give a full and fair price for the property, and thus the
interests of the *c. q. t.* be as safe under his purchase, as any
other.    These considerations have established the rule, that
if a trustee purchases for his own benefit, the sale is good
till set aside by *c. q. t.* who alone has the right to object.
*Wilson vs. Troup,* 2 *Cowen,* 195.   *Lester vs. Lester,* 6 *Ves.*
631, (*a.*)   *Campbell vs. Walker,* 6 *Vesey,* 678.    This appel-
lant claims through his principal.    To the same extent we
conceive he has rights, but no further.    The *c. q. t.* do not
object here: the sale is therefore valid.    But again; an
application to set aside a trustee's sale, must be made in a
reasonable time.   1 *Cain's Cases in Er.* 1.    *Chalmers vs.
Bradley,* 1 *Jac. and Walk.* 59.   *Wilson vs. Troup,* 2 *Cowen,*
195.   It appears here, from the answer of *Arthur Rider, jr.*
the only *c. q. t.* who asks the court to set aside the sale,
that he has long known of these transactions.   The sale
took place on the 25th February, 1817: the petition to set
the sale aside, was filed in June, 1829; after a lapse of
twelve years, can such an objection, even from *c. q. t.* be
listened to?   We contend that the delay has been most
unreasonable.   It appears, however, from the proof, and the
evidence is not contradicted, that the property sold, has been
greatly deteriorated ; from 2 to 500 cords of wood have been
cut off the land.   The court cannot do justice by vacating
this sale.    If it could restore the parties to their original
rights, and give them the same property, in substantially the
same condition, as when sold, the court might, with some
color of justice, rescind the sale, but that now is impracti-
cable.

The decree in *Harford* County Court is no bar, it is not
relied on as estoppel in the petition.   *Neafie vs. Neafie,*
7 *Johns. Ch. R.* 1.   The petition, to be sure, states the fact,
but not by way of estoppel; but as the attitude of the par-
ties is changed, the decree referred to, would not have con-
stituted a bar if pleaded as such.    If a defendant, in whose

favor a bill has been dismissed, thinks proper himself, to bring the same matter before the court, he may do so ; and then, the plaintiff in the first bill, is entitled again to be heard by the court.    3.  The high Court of Chancery, and the *Harford* County Court, in the exercise of its equity jurisdiction, are courts of concurrent jurisdiction, and as the proceedings originated in the former tribunal, the latter should not have taken cognizance of it.   The trustee who made the sale was the officer of the Court of Chancery, and his conduct as such, was not a subject for inquiry in *Harford* County Court.

*Johnson,* in reply.—This case is not to be decided as though *Benjamin  Richardson* alone, was asking to vacate the sale ; the new trustee, *Jones,* may be considered as uniting in the application.   *Samuel Richardson* was the actual purchaser. The answer of *Jarrett* shews, that he joined merely to enable *Samuel Richardson* to pay the purchase money, and without any view himself of becoming interested in the property.   *Benjamin Richardson* was treated by *Jarrett,* as a party having no interest in the purchase.   There can be no doubt that shortly after the sale, and at any time before ratification, the Chancellor would have vacated the sale upon the application of the heirs of *Rider,* whether it was beneficial, or otherwise.   The sale was not ratified until August, 1828, before which, acquiescence cannot be imputed to the parties.   One of the objects of the petition of *Benjamin Richardson,* was to vacate the sale, and have the bond for the purchase money given up ; it also called on *Jones,* the trustee, to report.   The order of the Chancellor is in conformity with the prayer of the report filed by *Jones,* except that part which dismisses the petition of *Richardson.*   The Chancellor erred in affirming in 1829, the sale made in 1818. No assent on the part of *Rider's* heirs is proved, nor is it shown that they acquiesced with a knowledge of the circumstances, without which they cannot be affected with the consequences of acquiescence.   3 *Harr. and Johns.* 410.

The ground upon which a party is precluded from objecting to a sale after acquiescence, is that it would be a fraud upon the purchaser, who may have gone on to put expensive improvements on the property; but here, so far from improvements, the property has deteriorated. The record exhibits no creditor but *Jarrett;* and *Rider's* heirs, consequently, are the only *cestui que trust,* and to them acquiescence is not to be imputed. Now, as these heirs unite with the purchaser in the application to vacate the sale, there does not seem to be any valid objection to it. If, however, the sale be valid, still the Chancellor erred in ordering the purchase money to be brought into court in this summary way. This cannot be done when the purchaser has given bond with security, to the trustee. The rule is general, that a legal remedy supersedes the jurisdiction of Chancery; the principle upon which the right of the court summarily to order the purchase money to be brought in rests, is, that before bond is given, legal proceedings cannot be instituted to enforce its payment. Courts of law cannot be resorted to, to enforce the decrees of a tribunal of competent jurisdiction, having authority itself to compel obedience to its own judgments. *Anderson vs. Foulk,* 2 *Harr. and Gill,* 364. 3 *Barn. and Ald.* 52. 5 *Serg. and Low,* 225. But suppose the *purchaser* himself, who has bonded, is subject to be dealt with in this summary way, still it is contended, that his securities cannot be; if such an order can be passed against them, it may be enforced by attachment, which is founded alone on a contempt of the court. The securities cannot be guilty of a contempt, because they enter into no engagement of any sort with the court; their contract is contained in, and is evidenced by the bond, which the trustee alone can enforce, by a proceeding at law. If sureties in a bond of this description are subject to attachment, then securities in injunction bonds may be treated in the same way, and thereby the right of a trial by jury would be denied to them. The appeal was not prematurely taken, though the order to bring the money into court, or show

cause, was not final; still the validity of the sale was conclusively settled, and the rights of the parties, in that particular, finally adjudicated upon.

BUCHANAN, Ch. J., delivered the opinion of the court.

We entirely concur with the Chancellor, in the view he has taken of the wily conduct of *Benjamin Richardson*, the appellant, whose whole course in relation to the subject of his petition, bears upon the face of it, the deep impress of trick and fraud; and in his refusal to set aside the sale, and exonerate *Benjamin Richardson* from his responsibility for the purchase money of the land, to which he had become subjected, by lending himself as a cover, to the violation of his duty, by an unfaithful trustee.

The policy of the law forbids, that a trustee shall become a purchaser, directly, or indirectly, at his own sale, and if he does, such sale may, and will be set aside, on the proper and reasonable application of the parties interested. In this case, *Benjamin Richardson* alleges in his petition, that he became the purchaser of the land at the instance, and for the exclusive benefit of *Abraham Jarrett*, and *Samuel Richardson*, a trustee appointed by the Chancellor, for the sale of it. Thus shewing, that although the purchase was nominally by him, the trustee was, with another, virtually the purchaser at his own sale. And upon that ground, and charging also a fraudulent collusion, between *Jarrett* and the trustee, to whose abuse of trust he admits that he lent himself as a cover, seeks to have the sale vacated; not for the benefit of any whose interest it was that the land should be sold to the best advantage, but to rid himself of a liability in which he has been involved by his own improper conduct. Every step he appears to have taken throughout the whole of his devious course, in connexion with this subject, merits the reprobation, rather than the favorable consideration, of a court of equity. The rule, that a trustee shall not become a purchaser at his own sale of the trust property, was not adopted in favor of trustees, but for the protection of the

interest of the *cestui que trust.* It is not, therefore, on the application of a trustee, to be relieved from his purchase of trust property at his own sale, that Chancery will interpose to set aside such sale. It is only done in behalf of those who are interested in the faithful execution of the trust. To vacate a sale by a trustee, at which he was himself the purchaser, either directly or through the agency of another, (merely on the principle that a trustee shall not become a purchaser at his own sale,) on the application either of such agent, or of the trustee, whenever it may be found convenient, or to his interest, to get rid of the purchase, would be an abuse of the rule to the prejudice of the *cestui que trust;* and in the emphatic, and very appropriate language of the Chancellor in this case, to make the rule, "a direct instrument of gross fraud." The order therefore, of the Chancellor, so far as it relates to the dismission of the petition of *Benjamin Richardson* with costs, will be affirmed. But so far as it directs *Benjamin Richardson,* and *Abraham Jarrett,* and *William Richardson,* his sureties, to pay the purchase money to the present trustee, or bring it into court, or show cause to the contrary, it is purely interlocutory, and professes to settle nothing between the parties; but affords them an opportunity to show, if they can, that they are not bound to pay, or bring the money into cout as directed, and is not as to that matter, an order from which an appeal will lie. But as doubts are entertained whether a purchaser at a trustee's sale, who has given bond for the purchase money, can regularly be compelled in this summary way, to pay, or bring the money into court; and a desire has been suggested by counsel, after argument, that we should express an opinion on the question ; in order that it may be put at rest, we will very briefly present our views of the subject. Where a sale is made under a decree or order in Chancery, and no bond or security is given for the payment of the purchase money, a practice has grown up in Chancery, and sanctioned by this court, in *Anderson vs. Foulke,* 2 *Harr. and Gill,* 346, to compel the purchaser to complete his purchase, by

an order on him in a summary way, to pay or bring the money into court, and that from necessity arising out of the peculiar character of such transactions.   No action at law will lie to enforce a decree in Chancery, within the territorial jurisdiction of the Court of Chancery.   An order of the Court of Chancery ratifying such a sale, is considered as amounting to a decree for the payment of the money; and if that court could not enforce the execution of it, it could not be enforced at all.   Before ratification the trustee cannot sue, because until ratified, the sale is not complete and binding; the contract is not perfect—nor can he sue at law after the ratification, because it thereby becomes a sale by the court; a contract with the court; and being but an agent, he cannot sue on a contract between the vendee and the court, and not a contract made and concluded with himself, and the order of ratification vests him with no authority to sue at law for the enforcement of the contract.   There is, therefore, in such a case, no person to sue at law, if an action at law would lie to enforce a decree or order in Chancery, and the remedy must be in Chancery.   But it may be asked, whence Chancery derives the authority to proceed in a summary way, by order, to enforce the payment of the purchase money; and why not proceed by bill in equity?   The answer to which is, that a *Court of Chancery having a clear right to enforce its own decrees, and an order of ratification being considered as amounting to a decree for the payment of the purchase money, a purchaser who neglects or refuses to comply with such decree, is in contempt, and may be dealt with accordingly, by an order in the first instance, (in this State) to bring the money into court, as preparatory to an attachment.   And that looking to an order of ratification, as amounting to a decree for the payment of the purchase money, there is no reason for requiring a proceeding by bill, to compel a compliance with such a decree, which would not apply to any other decree; and that such a course of proceeding would lead to endless and unnecessary circuity, without any beneficial result.*

But where a bond is given to the trustee for the purchase money, under an order of sale from Chancery, requiring bond to be given, the terms of sale are complied with, and a contract entered into, not with the court, but the trustee, on which, after ratification, he has a full and perfect remedy at law, for enforcing the payment of the purchase money, that is recognised and sanctioned by the order of ratification, which, in such case, is not a decree for the payment of the purchase money, but a confirmation only, of what has been done. And though the contract of sale, being perfected by the order of ratification, it is thereby said to become a sale by court, yet the terms of sale being complied with, and the purchase completed, by giving to the trustee as required, a bond to secure the payment of the purchase money, the purchaser is not in contempt by the non-payment of it. The contract on the bond not being with the court, but with the trustee, under the sanction of the court, and the remedy is by suit on the bond in a court of law ; and Chancery cannot enforce it, as a mere bond for the payment of money, by which the original simple contract of purchase is extinguished. And if the payment of the bond, as such, cannot be enforced by a bill in Chancery, *a fortiori*, can it not be enforced in a summary way, by an order to bring the money into court. There must be a decree, or order of ratification amounting to a decree, for the payment of the purchase money, as a foundation for an order to bring it into court. It is not merely on the ground, that the purchase money is remaining unpaid, that such an order is passed, but it is on the principle that there is a decree, for the payment of the purchase money, and the purchaser being in contempt, the order has for its object the enforcement of that decree. Where there is not such a decree, there can be no such order ; and an order of ratification sanctioning and confirming a contract of sale, by which bond and security is given for the payment of the purchase money, cannot we think, be construed to amount to a decree for the payment of it. Where the sale is a cash sale, the order of ratification is held to amount

to a decree for payment, which must be enforced in Chancery, there being no remedy at law. But where it is not a cash sale, and bond is given for the purchase money, the order of ratification adopts the bond, which stands in the place of a decree for payment, and is a legal contract, to be enforced at law. Every difficulty has, in this case, been thrown in the way of the recovery of the purchase money by the appellant, *Benjamin Richardson;* and by lapse of time, and otherwise, the subject is surrounded by some embarrassment. But he cannot expect to avail himself of a lapse of time, brought about by his own improper conduct; and there is no doubt, that under the peculiar circumstances of the case, the trustee, *Stephen Jones,* may by a bill properly framed, and against the proper parties, coerce the payment of the purchase money still due.

DECREE AFFIRMED, AND APPEAL FROM THE INTERLO-
CUTORY ORDER DISMISSED.