## THE MIDDLE STATES LOAN, BUILDING AND CONSTRUCTION CO. *vs.* THE HAGERSTOWN MATTRESS AND UPHOLSTERY COMPANY.

*Building Association Mortgages—Repayment of Loan Before Maturity of the Shares—Tender.*

Plaintiff corporation borrowed a sum of money from defendant, a building association, and executed a mortgage by which it agreed to pay interest monthly on the principal sum, and also monthly payments on 100 shares of stock in the association, and fines assessed against them until the shares subscribed for became fully paid and of the value of $100 per share, when, upon the surrender of the stock, the obligation of the mortgage should cease. Under the by-laws of the association a borrower had a right to repay a loan upon giving 30 days notice, but it was provided that in case shares should be withdrawn before maturity, the holder should be entitled to receive only the amount paid into the loan fund in monthly payments on his shares, with interest, after deducting losses. The monthly payment on each share was 60 cents, of which 50 cents a month was paid to the loan fund, and 10 cents a month applied to operating expenses. Dividends were not payable to members receiving advances on their shares. Plaintiff gave notice of its desire to repay the loan before its shares were fully paid, and tendered a certain sum which was refused by the defendant. Upon a bill to redeem the mortgage, *Held*,

1st. That the Court should not merely determine the sum due on the mortgage and remit the parties to another suit to determine the amount to be paid to the mortgagor on the withdrawal of its shares, but this amount should be ascertained and deducted from the sum due on the mortgage.

2nd. That the mortgagor must be charged with the amount of the loan, and interest thereon, down to the filing of the bill, and is to be credited with its payments into the loan fund, with interest on each payment from the time it was made down to the institution of the suit; and that for the amount thus ascertained to be due, the mortgagee is entitled to a decree, with interest thereon, until paid.

Where a debtor borrows money from a bank with which to make a tender of payment, and upon the refusal of the tender returns the money to the bank, such a tender is not sufficient to stop the running of interest on the debt.

Appeal from an order of the Circuit Court for Washington County (STAKE, J.)   The facts appear in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY and BRISCOE, JJ.

*Henry Kyd Douglas*, for the appellant.

In March, 1891, the appellee made application to the appellant stating it had 100 shares of stock on which it desired a loan of $5,000, to be secured by mortgage.   The loan was granted and a bond given conditioned for the payment of monthly interest on the said $5,000 and monthly payments on the 100 shares of stock subscribed for until the stock should be fully paid in and of the value of $100 per share ; a mortgage was also given.

The par value of the stock was $100 per share, but to obtain a loan of $5,000 it was necessary under the rules of the company to subscribe for one hundred shares of stock, one-half of the shares being called premium shares, required to be taken and carried as a premium for the loan of the money.   This two-share plan was adopted by this company and some others, instead of a different form of premium required to be paid by other companies.   The appellee received the money and made monthly payments of interest and dues on the 100 shares of stock for nearly three years. . It then applied to repay the loan and having waxed fat it kicked at the terms it had agreed upon for the money when in stress, and repudiated the contract upon which it had been acting for three years.   It refused to pay the sum of $3,735.98 and offered to pay $3,129.00.   This being declined it brought this suit.

The appellee contended that the premium charged by the appellant for the loan, to-wit, the monthly payments on the 50 premium shares of stock, was usurious, and that it had a right to receive back that sum or have it credited on the loan.   It also contended that it was entitled to any divi-

dends that had been declared and set aside to help to mature the stock; that although the dividends were only credited to the debtor's stock to help to mature it and were never payable in cash, the appellee upon repayment was entitled to be paid in cash. This means that the appellee was only to pay six per cent. for the money borrowed and in reduction of that was to be paid as a member cash all dividends that might be declared while he was debtor to the company. Of course, these contentions strike at the very root of all building associations, and if correct will close them all up; perhaps drive them into insolvency. The Judge below sustained the appellee's position. The pith of his opinion is: "It (the appellee), is to be credited against the advancement of $5,000 with all and every payment of $50 made on account of the loan fund *without abatement on the amount as premium or bonus for the loan.* * * * With the right to repay the money advanced it would be entitled to *an additional credit of all profits* belonging to its stock, &c." Every borrower from a building association becomes a member as of a joint stock company, and he may be considered as first a member, then a borrower. In fact, he is estopped from denying his membership. Being a member, he cannot, as a borrower, plead usury, for he would be stultifying himself by protesting in his own case against the usury which he gets the benefit of in the case of other borrowers. A borrower at usury is a lender at usury. *Endlich Law of Building Associations*, sec. 81; *Same*, sec. 361. The premium for the loan demanded by a building association is not usury. It is expressly permitted by Code, Art. 93, sec. 28.

In repaying the loan the appellee, for another reason, has no right to demand, in reduction of his debt, to be credited with payments made on the premium shares of stock; payments on the stock are not payments on the loan. He may pay off the loan and continue to hold the stock. *Endlich*, secs. 374, 452; 2 *Eng. and Amer. Ency.* 639, sec. 12.

A borrowing member who withdraws certainly has no

claims upon the property or dividends declared while he is its debtor. When he joins the company he goes into a joint stock company enterprise, and has no right to withdraw from it until the scheme is worked out. If he is permitted to withdraw he must expect to give up certain rights and profits he would have if he remained to the end of the enterprise and partook of its hazards. By law and reason he is not entitled to the dividends which had been declared while he was a member and a debtor. Otherwise borrowing money might be a money-making speculation. *Endlich*, secs. 128, 129, 151, 452; 2 *Eng. and Amer. Ency.*, 624, 625; *Watkins* v. *Workingmen's Ass.*, 97 Pa. St. 514. But the fact is, further, that no dividend in cash was ever declared in this or any other case of this class. There is a dividend declared, but it is not declared or paid in cash; it is credited to the stock and helps to mature it. Cash dividends are only declared upon full paid, interest-bearing stock.

*Fred. F. McComas* (with whom was *A. C. Strite* on the brief), for the appellee.

This case had its inception in an attempt of the Middle States Building Association to retain $25 of the $50 paid into its loan fund monthly by the Hagerstown Mattress Factory, as a premium on a loan which was repaid at the end of thirty-four months. The dues of the Mattress company were $85.00 per month, of which $25.00 was interest. $10.00 went to pay the running expenses of the association, and $50.00 went into the loan fund. The Mattress factory claimed credit for the entire $50.00 toward the liquidation of its mortgage debt. The association was willing to credit only $25.00, claiming the other $25.00 as a premium on the loan. The association also refused to credit the profits earned by the Mattress company's stock, to-wit: $203.00 towards the liquidation of the mortgage debt. The Court below ruled that the building association had no such right, and ordered an account stated allowing the Mattress com-

pany these credits.   The right of a building association, incorporated under the laws of Maryland, to charge any premium, must rest upon the provisions of either section 103 . or section 98, Article 23 of the Code.   There is no other statute.   A comparison of section 3 of the building association's articles of incorporation, with section 103 of Article 23 of the Code, must convince the Court that the incorporators of the building association had the advantages of the provisions of that section in mind when they drafted their articles of incorporation.   The advantage of that section would allow a premium to be charged by making it payable as part of the monthly dues, and this is what the building association in this case is attempting.   The Court of Appeals have declared the Act of 1872, chapter 158, unconstitutional. *Citizens' Security and Land Company* v. *Uhler*, 48 Md. 455. Section 103 is not therefore a part of the organic law of the State.

The only sort of premium sanctioned by section 98 of the Code, is a premium agreed upon at the time the contract was entered into.   The testimony in the case negatives the possibility of such agreement.   The mortgage does not stipulate a premium.   The method of payment of the premium, to-wit, collecting it as part of the monthly dues, negatives the idea that any such premium as section 98 speaks of, was contemplated.   The by-laws nowhere speak of a premium, nor does the application or bond.   The Court properly ruled, therefore, that the Mattress factory was entitled to be credited with the amount claimed by the building association as a premium.

The building association admits that the profits on the stock held by the Mattress factory up to the time they drew out were $203.00.   The Court properly ruled that the Mattress factory was entitled to be credited with the profits on its stock in part payment of its mortgage debt.

The right of the Mattress factory to pay off its loan at any time upon thirty days notice is not denied.   *Shanon's case*, 36 Md. 394; *Lister's case*, 38 Md. 119.   If a building

association concedes that right to a borrowing member, a retiring member ought not to be called upon to give up half the money he has paid in, together with all his profits as the price of getting out. The iniquity of such a plan becomes more glaringly apparent when we stop to think that the man who stands by the association the longest loses most, while the man who gets out the soonest saves the most. A Court of Equity ought not to tolerate such a scheme for trapping the unwary one minute longer than necessary to declare its mortgages· fraudulent and against public policy.

This building association proposes to mature stock in seven years. The Mattress factory held one hundred shares which at maturity would be worth $10,000. The idea of a true building association is that the borrower gets in advance what his stock is worth at maturity. The Middle States Building Association advances half that amount, and distributes the other half among the non-borrowing members. The borrower gets 50 cents on the dollar and bears all the burdens ; the lender gets 100 cents on the dollar and only needs to exercise a little patience. If the Mattress factory had staid in seven years, they would have repaid $4,200.00 of the $5,000.00 back, nearly the' entire principal of the original loan. They pay monthly the interest on $5,000.00 when they never had the use of $5,000, except for the first month. The rate for the first month is 6 per cent.; when the loan is half paid the rate has risen to 12 per cent.; for the last month the rate is 600 per cent. Besides paying this enormous rate of interest, the borrower gets no profits, for, according to the contention of the Middle States Building Association, $5,000.00 is all the Mattress factory will ever get, while at maturity its stock would be worth $10,000.00, the $5,000.00 difference representing nearly their profits. The price which the Mattress factory would have to pay for their money, provided they staid in seven years, and the building association should succeed in maturing its stock in seven years, of which there is no cer-

tainty, is something appalling to think of. A mortgage of that sort is certainly usurious, and should be set aside on that account. *Birmingham et al.* v. *Maryland Land and Permanent Homestead Association,* 45 Md. 541 ; *Citizens' Security and Land Company* v. *Uhler,* 48 Md. 455.

BRYAN, J., delivered the opinion of the Court.

The Hagerstown Mattress and Upholstery Company of Washington County borrowed five thousand dollars from the Middle States Loan, Building and Construction Company of Hagerstown, and executed a mortgage to secure the payment of the loan. It filed a bill in equity praying leave to repay the money and redeem the mortgage. It was not questioned that it had the right of redemption, but the controversy was upon the amount to be paid for the purpose. The Court below filed an opinion in which it stated the terms on which the redemption might be made, and referred the case to an auditor to state an account in accordance with its opinion. Upon the coming in of the auditor's report the account was ratified and confirmed. The Middle States Company has appealed.

The following recital in the mortgage shows the nature of the transaction between the parties. " Now, whereas the said Hagerstown Mattress and Upholstery Company has become a member of the said The Middle States Loan, Building and Construction Company of Hagerstown, Maryland, and has subscribed for 100 shares of the stock of said company, and has a loan of five thousand dollars thereon, for which he has executed his bond or obligation of even date herewith, payable to said company with interest from date, payable monthly, with the following conditions : If the said Hagerstown Mattress and Upholstery Company shall pay the interest monthly on said sum of five thousand dollars received by them as aforesaid, and shall make the monthly payments monthly on 100 shares of stock of said company, and shall pay any and all fines assessed against them on said shares of stock, and shall likewise pay, when

due, the taxes assessed against the property mortgaged to secure the repayment of said loan of five thousand dollars and the premiums necessary to keep the buildings on said mortgaged property insured from loss by fire, in such sum as the said company may require (not exceeding $5,000.00), until the said stock subscribed for by them as aforesaid becomes fully paid in, and of the value of $100.00 per share, then it is understood, that upon the surrender of said stock to said company, this obligation shall be deemed fully paid and cancelled. But, if they fail to pay, when due and payable, the said taxes and insurance premiums, or make default in the payment of said monthly interest, fines and monthly payments on said stock for a period of six months after the same are or any instalment thereof is due, then, at the option of said company, the whole indebtedness evidenced by this obligation, including any taxes and insurance premiums due or paid by said company, shall at once become and be due and collectible and a foreclosure of said mortgage in the manner therein provided may be had."

The mortgage has some of the features of an ordinary building association mortgage, but it also has some others appropriate to ordinary loans of money. Building associations are authorized to transact their business by Article 23 of the Code, sections 95, 96, 97, 98 and 99. They advance to any member, for such premium as may be agreed upon, the sum which he would be entitled to receive on the dissolution of the corporation for any number of shares which he may pledge, or they purchase from him certain shares of his stock. And the member is bound to pay the dues on the shares of stock as provided by the articles of assotion, and to pay interest at the rate of six per cent. per annum on the sum so paid or advanced to him. He is to pay the dues and the interest at such times as are prescribed by the articles or by-laws, and also fines and penalties for default in the prompt payment of interest and dues, as may be in like manner prescribed. These payments are to continue until the shares are worth the sum of money advanced

or paid to him.   And it is usually provided that then the
association is to be dissolved.   The member so receiving
the advance or payment of money executes a mortgage to
the association to secure the payment of the interest and
his dues, and the fines and penalties which he may incur;
but he never agrees to pay back the money advanced to
him, or contracts any responsibility for it.   It is anticipated
that from the prosecution of the business of the associa-
tion the shares will in the course of time be worth the
amount advanced, and that the association will be paid by
its ownership of them.   On the other hand, the borrowing
member participates in the prosperity of the business by
being enabled, through the enhanced value of the stock, to
discharge the loan in consequence of the surrender of his
shares to the association.

In the present case the shares at their par value are worth
double the amount borrowed and the dues are to be paid upon
them until they reach par, when they are to be surrendered
to the association.   The mortgage secures the payment of
the interest and of the dues and fines, and also the repay-
ment of the sum borrowed.   On default in any of the condi-
tions of the mortgage the sum borrowed becomes, at the
option of the mortgagee, a debt to be paid by the mortgagor.
By section 5 of Article 6 of the by-laws of the building
company the mortgagor has a right to repay the loan at
any time on giving thirty days notice.   The notice having
been duly given, a controversy has arisen in regard to the
amount necessary for the repayment of the loan.   A bor-
rower can never in this State be required to pay in satisfac-
tion of an ordinary loan more than the principal and six
per cent. interest per annum thereon.   Therefore if this
amount should be paid by the mortgator in this case, the
debt would be discharged.   But the mortgagor is not only
a debtor, but is also a stockholder in the building company,
and after the payment of the debt, it would still be a stock-
holder, and would still have all the rights and be liable to
all the obligations attached to the ownership of stock.   By

the by-laws it would have the right of withdrawing its stock according to certain terms which will hereafter be explained. Although not stated in so many words, it is evident that it is the purpose of the mortgagor to settle and conclude all of its business with the mortgagee, and to dissolve all connection between them. It is proper to settle in this suit all the questions between the parties growing out of their dealing with each other on the subject of this loan. We must therefore determine what amount the mortgagor is bound to pay to the mortgagee, and what amount it is entitled to receive on the withdrawal of its shares.

It is alleged in the bill of complaint that on the fifth day of February, eighteen hundred and ninety-four, the mortgagor tendered to the mortgagee thirty-one hundred and twenty-six dollars and sixty cents in full satisfaction, and that the mortgagee refused to accept it, but demanded a larger sum as due, to-wit, thirty-seven hundred and thirty-five dollars and ninety-eight cents. And in the thirteenth paragraph of the bill it is further alleged that the mortgagor ever since the day of said tender has been, and at the time of the filing of the bill, was able and ready to pay the amount of principal and interest due on said mortgage, and it was maintained that interest on the principal should not run after the day of the tender. The mortgagee (the defendant below) denied the thirteenth paragraph. It was shown in evidence by the treasurer of the mortgagor that he borrowed the money from the bank of Eavey, Lane & Co., and tendered it to the mortgagee; and on its refusal to accept it, he returned it to the bank. Such a tender is far short of what is necessary to stop the running of the interest. In *Columbian Building Association* v. *Crump*, 42 Maryland, 194, it was decided that in order to stop the interest the mortgagor must not only make a tender, but "must keep the money continually ready and make no profit of it." Section 13 of Article 2 of the by-laws already mentioned states the terms on which stock may be withdrawn. It is in these words: "Shares may be withdrawn

at any time after three months, and before maturity, and the holder thereof will be entitled to receive the amount paid into the loan fund in monthly payments on such shares together with six per cent. annual interest, less any losses to which the stock withdrawn may be subject. The membership fee of one dollar per share cannot be withdrawn." By section 5 of the same Article the monthly payment on each share is fixed at sixty cents; of this sum fifty cents a month must be paid into the loan fund, and ten cents a month must be applied to defray the operating expenses. By the charter of the building company, dividends are not to be paid to members who receive advances or loans on their shares.

If the mortgagor is ready to pay the amount due on the mortgage its rights will not be affected by the twelfth section of Article 2 of the by-laws, which declares that "shares on which loans have been made may be withdrawn if the loan is paid, but not otherwise."

It would flagrantly and unreasonably increase expense and litigation if we should merely determine the amount due on the mortgage, and remit the parties to another suit to determine the amount to be paid to the mortgagor on the withdrawal of his shares. In such case the mortgagor would be required to pay to the mortgagee a sum of money, with the necessity of ascertaining by future litigation what portion of this money should be returned to him. No Court of Equity could tolerate such a proceeding. Justice requires that we should ascertain what the mortgagor would be entitled to receive when his shares are withdrawn, making the hypothesis that the mortgage debt has been paid; and then we must deduct this amount from the sum due on the mortgage. There is no possibility that we can in this way injuriously affect the rights of the mortgagee; because until the whole indebtedness shall be paid, the mortgage must remain in force and effect. In our opinion the mortgagor must be charged with the loan of five thousand dollars with interest thereon down to the filing of the

bill of complaint, and it is to be credited with its payments into the loan fund, to-wit, fifty cents a month on each of its shares, with interest on each payment from the time it was made down to the institution of this suit. For the amount thus ascertained to be due, the mortgagee is entitled to a decree with interest thereon until paid. The learned Judge who heard this cause in the Court below decided that the mortgagor was entitled to the dividends on its shares of stock. He also decided that the tender of thirty-one hundred and twenty-six dollars and sixty cents by the mort-gagor was good and effectual to stop the running of interest from the time it was made. The ground of his opinion was that the amount tendered was more than was due. If the dividend on the stock be not allowed to the mortgagor the amount was less than was due. And according to the case in 42 Maryland, above cited, the tender would not, under the circumstances accompanying it, be sufficient to stop the accrual of interest.

We will reverse the order of the Court below and remand the cause for further proceedings in accordance with this opinion.

*Reversed with costs in both Courts and remanded.*

(Decided February 14th, 1896.)

N. B.—This opinion was filed after Judge Robinson's death, but he concurred in it in his lifetime.