The appeal in this case is from an order overruling a demurrer to the bill of complaint. The bill is a long one — covering fifty-one pages of the record. We do not find it necessary to enter upon a minute examination and analysis of all its allegations. It will be sufficient to refer to the following *Page 385 
facts, conceded by the demurrer, which make applicable the principles which, in our judgment, should control the case. The case is one in which it is charged that two directors of a corporation wrongfully induced the plaintiffs, who were stockholders in the corporation, to transfer and deliver to them individually for their own use and benefit certain shares of common stock of the corporation. The relief sought is the return of the stock and for an accounting. A more specific reference to the relief prayed for will be presently made.
The C.A. Gambrill Manufacturing Company is a Maryland corporation. For many years it had been engaged in the business of milling and the production of cereal foods. Prior to October 1916 its capital stock had consisted of three thousand shares of the par value of $100 each. The appellants, the defendants below, were officers and directors of the corporation — one of whom, Charles C. Macgill, being its president. They owned and controlled a majority of the stock and dominated the corporation, and are charged to be "the controlling interests" in the corporation. The appellees, the plaintiffs below, held certain shares of the common stock. R. Ruskell Macgill had one hundred shares; M. Blanche Sencindiver held one hundred shares, and William S. Macgill held nineteen shares. For a period of about nine years preceding July 1st, 1916, the average annual dividends upon the stock were less than four per cent. per annum. In 1911 there was a loss of $59,668.96, and in 1912 a loss of $47,721.51. There was no dividend paid in 1913 and 1914, and in 1915 a dividend of three per cent. was paid. In the report of the president to the stockholders on July 24th, 1916, he stated: "We have handled the largest business the company has ever done, with gross profits of $125,825.08, from which we have charged off $8,845.47 for improvement and $87,506.66 for depreciation, leaving a net profit of $29,473.95, which added to balance carried forward last year, makes our credit balance $60,064.69, from which a dividend *Page 386 
of 4% was declared, leaving $48,064.68 balance to the credit of Profit and Loss Account." On August 12th, 1916, the corporation, through its secretary, addressed the following letter to its stockholders:
 "At the annual meeting of the stockholders of July 24th, 1916, the advisability of converting part of the common stock of the company into 7% cumulative preferred was discussed. Some of the stockholders present were desirous that the following offer be made to stockholders:
 "That an amount of stock not to exceed $150,000 be changed to 7% cumulative preferred, the preferred stock retaining the same voting rights as the common and to be a first lien on the property of the company. Dividends, if earned, to be paid semi-annually in January and July on the preferred stock, and no dividend to be declared on the common stock until all accrued dividends on the preferred stock have been satisfied, the company to have the option of retiring the preferred stock on 30 days' notice at $110 per share and interest.
 "In making this proposition it is to be understood that the controlling interests agree not to take any of the preferred stock until the minority interests have first subscribed to the amount they desire.
 "We would like to hear from you as to whether you would like to change your stock under this plan. If the majority wish to do so, we will call a meeting of the stockholders and ratify the change.
 "A prompt reply requested."
On September 28, 1916, Charles C. Macgill addressed the following letter to the stockholders:
 "To the Stockholders of the C.A. Gambrill Mfg. Co.
 "Dear Sirs: My object in this letter is to give our reasons for the proposed change of one-half of our common stock to preferred.
 "Our mill at Ellicott City was destroyed by fire in April last. The burned property was insured for about $110,000.00, and in addition to this we had `Use and *Page 387 
Occupancy' insurance for twelve months at the rate of $5,000.00 per month, for such length of time as would be required to rebuild the property, but not, of course, exceeding twelve months. The purpose of this latter insurance was to cover the probable loss in the business pending rebuilding.
 "Due to the increased cost of all machinery and building operations, brought on by the war, it was quite impossible to erect a new mill at anywhere near the amount of insurance collected on the burned mill.
 "At a meeting of the directors held in June to consider the future of the business, and plans and cost of a new mill, the controlling interest of the company, believing in its future, and actuated by a desire to continue the business which had been so long established, and with which they had been so long associated, and at the same time to give the minority stockholders a greater degree of security with a larger and more staple return than in the past upon their investment in the company, suggested the exchange of common for preferred shares as already outlined, leaving the common shareholders to take their chances with the resulting advantages and disadvantages in the future prosperity of the company, after dividends had been paid to the preferred shareholders.
 "At the regular annual meeting of the stockholders in July, we were asked to submit this suggestion to the stockholders. This has been done, and we have so far received replies from nearly all the minority holders in favor of the exchange. It is understood that there will be no expense to shareholders in making the exchange.
 "In changing one-half of the stock of the company to preferred, each stockholder would receive one-half of his present holdings in preferred stock, but realizing that many of the present stockholders will prefer to exchange all their holdings for preferred stock, the controlling interest have agreed to accept from any stockholder the remaining one-half of his common shares, and give him in exchange an equal number of preferred *Page 388 
shares, provided this offer is availed of prior to November 1st, 1916.
 "I am enclosing the last report of the company."
At a meeting of the Board of Directors held on the 27th day of September, 1916, the following resolution was adopted:
 "Resolved, That the following amendment to the charter of the C.A. Gambrill Manufacturing Company of Baltimore City is advisable, to wit: The total amount of the capital stock of the corporation, which at present amounts to $300,000.00, consisting of 3,000 shares of common stock of the par value of $100.00 each, shall be changed by reducing the common stock to 1,500 shares of the par value of $100.00 each, and by the issuing of 1,500 shares of preferred stock of the par value of $100.00 each, so that the capital stock of said corporation in the future shall consist of $300,000.00, represented by 1,500 shares of common stock of the par value of $100.00 each, and 1,500 shares of the preferred stock of the value of $100.00 each.
 "Each stockholder of each class of stock being entitled to one vote for every share of stock standing in his name.
 "The holders of the preferred stock shall receive and the said corporation shall be bound to pay (out of the profits) fixed annual dividends of seven per centum per annum on the par value of the preferred stock, so held by them, payable in equal semi-annual instalments of three and one-half per cent. each on the 25th day of January and July in each year, the first instalment being payable January 25th, 1917, before any dividends shall be set apart for or paid to holders of the common stock, and such dividends so to be paid to the holders of the preferred stock shall be cumulative, and if not earned and paid in any year they shall be paid out of the profits before any dividend is paid on the common stock, but without interest, and in case of liquidation, dissolution or distribution of the assets of the corporation, the holders of the preferred stock shall be entitled *Page 389 
to receive in full payment the par amount of their preferred shares, together with any unpaid dividends thereon, before any amount shall be payable to the holders of the common stock; the preferred stock shall be redeemable at any time by the corporation upon 30 days' notice, at the rate of $110.00 per share and interest on the par value thereof at the rate of seven per centum per annum from the date of the payment of the last dividend thereon. Each of the present stockholders shall surrender one-half of the shares of the common stock now held by him and shall receive in lieu thereof preferred shares of stock equal in number to the shares of common stock so surrendered by him.
 "A meeting of the stockholders of the C.A. Gambrill Manufacturing Company of Baltimore City is hereby called for Monday, the 9th day of October, 1916, at the company's office, No. 110 Commerce street, Baltimore, Maryland, at 3 o'clock P.M., to take action on the aforegoing resolution.
 "It is especially important that you attend this meeting. If you do not expect to be present, kindly sign the enclosed proxy, let someone sign as witness to your signature and return the same to us.
 "This will enable your proxy to vote on the proposed amendment.
 "Yours truly,
 "C.A. Gambrill Mfg. Co., "H.M. Blinn, "Secretary."
The amendment to the charter, set forth in the resolution, was adopted by the stockholders at their meeting on October 9th, 1917, and on the following day the secretary of the company wrote to the appellees notifying them that the amendment had been adopted, and saying that:
 "It is necessary that all of the present certificates be surrendered to the company at once.
 "Please let us have your certificate properly endorsed, and we shall issue to you new certificates, so that your holding will consist of the same number of *Page 390 
shares as at present, but one-half of them will be preferred stock and one-half common stock.
 "If you wish to avail yourself of the offer made by the controlling interests to give preferred stock in exchange for your common stock, let us know at once, and we will arrange with them for the exchange."
The appellants, while professing to act under the resolution of September 27, 1916, which was adopted at the stockholders meeting on October 8 as an amendment to the charter, took no preferred stock, but retained all their common stock, and in addition thereto acquired from the plaintiffs one-half of their common stock by delivering to them preferred stock — the other half being exchanged by the plaintiffs under the terms of the amendment. We here insert the sixteenth paragraph of the bill:
 "Your orators further allege that, as heretofore stated, there was a credit balance on July 1st, 1916, of $48,064.69 after having paid a dividend of 4 per cent. And it was, as heretofore stated, on the 9th day of October, 1916, that the amendment was made to the charter of the corporation whereby the shares of stock were changed from common to preferred. And your orators in this connection particularly call attention to that part of the letter heretofore referred to and incorporated in this bill of complaint which bears the date of September 28, 1916, from the defendant, Charles C. Macgill, addressed to the stockholders and signed individually, wherein he states that the controlling interest agreed to accept from any stockholder the remaining one-half of his common stock and give him in exchange an equal number of preferred shares, provided the offer is availed of prior to November 1, 1916. As your orators have heretofore alleged and shown who was the controlling interest in said corporation, your orators now allege that the letter of the date of September 28, 1916, was written for the purpose of obtaining all the common stock for the said Charles C. Macgill and the said Richard G. Macgill as speedily as possible *Page 391 
in order that they might reap the fruit of their deception and the profit of the business of the corporation. Your orators file herewith a copy of the statement showing the profits of the business of said corporation for the six months ending January 1st, 1917, which shows a profit for the six months of the business of said corporation of $312,165.52, which, added to the credit balance of July 1st, 1916, of $48,064.69, made a total credit balance of $360,230.21."
It is alleged in the eighteenth paragraph of the bill that the appellants
 "knew in advance the huge dividend that would be paid on the common stock at the end of the fiscal year June 30, 1917. And this knowledge was concealed from the shareholders of said corporation for the purpose of gain to the said Charles C. Macgill and the said Richard G. Macgill, for your orators charge that from the profits of the business of the corporation for the year beginning July 1, 1916, and ending June 30, 1917, said corporation paid in cash dividends 300 per cent. on the common stock held in said corporation on the 30th day of June, 1917, and the holders of the common stock on that day were:

 "Charles C. Macgill, 517 1/2 shares, par
 value, $100.00 ........................... $155,250.00
 "Richard G. Macgill, 517 1/2 shares, par
 value, $100.00 ........................... 155,250.00
 "Mrs. S.R. Macgill, 191 1/2 shares, par
 value, $100.00 ........................... 57,450.00
 "Miss M.A. Macgill, 123 1/2 shares, par
 value, $100.00 ........................... 37,050.00
 "W.H. Hayward, 14 shares, par value,
 $100.00 .................................. 4,200.00
 "H.M. Blinn, 11 shares, par value, $100.00 3,300.00

 making 1,375 shares out of 1,500 shares, being the total number of shares outstanding."
For the purpose of showing the loss sustained by the plaintiffs and the profits which accrued to the defendants in the *Page 392 
transaction the plaintiffs filed as a part of the bill the following statement:
 "R. Ruskell Macgill, 50 shares
 common stock, par value,
 $100 ............................ $5,000.00
 "Dividend paid July 19, 1917, 300 per
 cent ......................................... $15,000.00
 "Dividend paid July 17, 1918, 100 per
 cent ......................................... 5,000.00
 __________
 "Dividends paid .................................. $20,000.00
 "Value of stock at present based on statement
 for year ending June 29, 1918 ................ 50,000.00
 __________
 "Total ......................................... $70,000.00
 "For which the said R. Ruskell Macgill
 received 50 shares of preferred stock
 at $110.00 per share ......................... 5,500.00
 __________
 "Profit to the said C.C. and R.G. Macgill ........ $64,500.00
 "(Same for M. Blanche Sencindiver.)
 "William S. Macgill, 9 1/2 shares common
 stock, par value, $100 .. $950.00
 "Dividend paid July 19, 1917, 300 per
 cent ......................................... $2,850.00
 "Dividend paid July 17, 1918, 100 per
 cent ......................................... 950.00
 "Value of stock .................................. 9,500.00
 __________
 $13,300.00
 "For which received .............................. 1,045.00
 __________
 "Profit to said C.C. and R.G. Macgill ............ $12,255.00"

It is then charged that from the profits of the business of the corporation for the year ending June 30, 1918, the holders of the common stock were paid a cash dividend of 100 per cent. The plaintiffs' preferred stock was redeemed *Page 393 
under the resolution and amendment referred to at the rate of $113.50 per share.
The prayers of the bill are:
 "1. That the said Charles C. Macgill and Richard G. Macgill be required to return to your orator, R. Ruskell Macgill, 50 shares of the common stock of the C.A. Gambrill Manufacturing Company. And return to your orator, M. Blanche Sencindiver, 50 shares of the common stock of said corporation, and return to your orator, Wm. Macgill, 9 1/2 shares of the common stock of said corporation, upon payment at the rate of $110 per share and accrued dividend of seven per cent.
 "2. That the said Charles C. Macgill and Richard G. Macgill be required to account to your orators for the dividends received by them for the years ending June 30, 1917, and June 30, 1918.
 "3. That your orators may have such other and further relief as their case may require."
There are many charges of a general and indefinite nature contained in the bill, but it is unnecessary to notice them as the facts we have stated are sufficient to require an answer from the defendants.
The principles which control this case are well settled in this State. They were stated with great clearness by JUDGE ALVEY inCumberland Coal and Iron Co. v. Parish, 42 Md. 598. In that case a bill was filed to foreclose a mortgage alleged to have been given by the appellant to Allen M. Sherman. The Court said: "It appears that at the time when the mortgage sought to be enforced was made, and for some time previous, Sherman, the mortgagee, was not only one of the directors, but was a member of the executive committee; and also financial agent of the company, the mortgagor. There is therefore no question as to the fact that Sherman bore an important fiduciary relation to the company, as well as one of trust and confidence in the general control and management of its affairs. Holding such relation, he was bound to exercise all the power and authority *Page 394 
delegated to him, in conjunction with others, for the protection of the property, and the promotion of the best interest of the corporators, the stockholders, according to his skill and ability. As between trustee and cestui que trust, or agent and principal, the rule is inflexible, that the trustee or agent cannot be allowed to take the benefit of a transaction the entering into which was in violation of his duty, or where the benefit claimed and the duty required to be performed are in any respect inconsistent, the one with the other. The rule is founded on considerations of public policy, having in view the great difficulty, which must always exist in such cases, of obtaining clear and satisfactory evidence of the fairness of the transaction, and of the entire absence of all abuse or advantage taken of the confidence reposed in such trustee or agent. And it is now well settled that directors and managers of corporations, and other companies, are equally within the rule which guards and restrains the dealings and transactions between trustee andcestui que trust, and agent and his principal; such directors or managers being in fact trustees and agents of the bodies represented by them. Attorney General v. Wilson, 1 Cr. 
Phil. 1; Benson v. Heathorn, 1 Y. Coll. 326; R.R. Co. v.Hudson, 16 Beav. 485; R.R. Co. v. Blaikie, 1 Macq. 461;R.R. Co. v. Magnay, 25 Beav. 587; Hoffman Coal Co. v.Cumb. C. I. Co., 16 Md. 456, and same case in 20 Md. 117." This case has been uniformly followed and approved by this Court.Booth v. Robinson, 55 Md. 419; Mutual Fire Ins. Co. v.Farquar, 86 Md. 668; The James Clark Co. v. Colton,91 Md. 195; Welborn v. Kleinle, 92 Md. 114; Fisher v. Parr,92 Md. 245; Penn. R.R. Co. v. Minnis, 120 Md. 461.
As the appellants must answer the bill and the cause be heard upon its merits, we refrain from discussing the facts or from drawing inferences from them, but the facts alleged are sufficient, in our opinion, to bring the defendants fully within the principles announced by this Court in the cases to which we have referred.
Order affirmed, with costs and cause remanded. *Page 395