KARL TURK, Sr., et al. *v.* ELISE A. GROSSMAN

ELISE A. GROSSMAN *v.* KARL TURK, Sr., et al.

[Nos. 42 and 43, April Term, 1939.]

646

648

*Decided June 6th, 1939.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Harvey C. Bickel and Randolph Barton, Jr.,* for Karl Turk et al.

*William L. Marbury, Jr.* and *Boyd B. Graham,* with whom were *William L. Rawls, Charles P. Coady, Jr., Marbury, Gosnell & Williams,* and *Coady & Farley,* on the brief, for Elise A. Grossman et al.

PARKE, J., delivered the opinion of the Court.

The questions on these appeals arise on demurrers to pleadings in equity. A bill of complaint was filed in the Circuit Court of Baltimore City by Lloyd E. Mitchell, Incorporated, and Elise A. Grossman, against Karl Turk, Sr., individually and as sole remaining executor of the estate of Heinrich Turk, deceased, Margaret M. Turk, wife of Karl Turk, Sr., Herman O. Weinholt, and W. Graham Boyce, defendants. By agreement of the parties Thekle Weinholt, wife of the defendant, Herman O.

Weinholt, was made a party defendant as though she had originally been a party defendant, and all the allegations of the bill and its amendment and the subsequent pleadings are to be considered and taken as fully applicable to her as a party defendant and united and uniting therein. The plaintiffs are creditors of Heinrich Turk, a decedent, and they sue in behalf of themselves and all other of his creditors. The defendants filed a combined demurrer and answer. The bill of complaint was later amended by the addition of a paragraph which sets forth similar alleged facts with reference to additional shares of stock of which the plaintiffs were unaware, as well as of the transactions of the defendants with respect to the same, when the original bill was filed. The defendants again demurred and answered, and the plaintiffs demurred to sub-paragraph 5 of the second paragraph of the answer. The matter came before the chancellor on demurrer, and he, first, overruled the demurrer to the bill of complaint and, in turn, overruled the plaintiffs' demurrer to the specified portion of the answer of defendants. From these rulings both sides have appealed. The two appeals are on the same record, and here docketed in the order of the pleadings.

The parties are shown to stand in these relations. Elise A. Grossman is a resident of Baltimore City and the former wife of the decedent, Heinrich Turk, from whom she was divorced in 1925. The other plaintiff is a corporation of Maryland, with its principal place of business in Baltimore City. Each of these plaintiffs is a creditor of Heinrich Turk. The defendant Karl Turk, Sr., is a brother of the decedent, Heinrich Turk, and the husband of Margaret M. Turk. Herman O. Weinholt married the defendant Thekle Weinholt, the sister of Heinrich Turk and of Karl Turk, Sr. The other defendant, W. Graham Boyce, is the chairman of the board of directors, and the secretary and treasurer, of The Porcelain & Manufacturing Company of Baltimore, a corporation of Maryland which is engaged in the manufacture of porcelain enamel. The natural and corporate defendants

live and have their residences in Baltimore City, with the single exception of Margaret M. Turk, who lives in Baltimore County.

The pleadings and exhibits are voluminous, and their contents will be summarized so as sufficiently to present the questions raised by the demurrers.

Heinrich Turk died testate in Baltimore County on November 7th, 1934. He named as his executors his second wife, Eileen Turk, and his brother Karl Turk, Sr., a defendant. The will was duly admitted to probate in Baltimore County on December 20th, 1934, and letters testamentary were granted on that day to his executors, who gave bond in the substantial sum of $1000.

The plaintiff Elise A. Grossman filed, on June 5th, 1935, in the Orphans' Court of Baltimore County, a petition whereby she sought to establish her claim against the estate by virtue of a contract, which had been made on October 14th, 1925, between her and the testator. As a result of an agreement entered into by the claimant and the personal representatives of the testator, she withdrew the petition on December 17th, 1936, and two days later filed her claim against the estate of the testator in the principal amount of $25,500. With the acquiescence of the personal representatives, the Orphans' Court of Baltimore County duly passed this account. The plaintiff corporation filed its claim in the sum of $2058.10 on October 20th, 1936, and the same day it was likewise passed.

An inventory was filed by the executors on May 11th, 1935. The total value of the automobile ($300) and of certain stocks ($5504) returned was $5804. All the shares of stock were pledged as collateral for two loans of the testator, and their appraised value was, in each case, less than the principal amount of each loan. One of the notes was to Herman O. Weinholt for $5000 and accrued interest, and the collateral on the note was 2320 shares of the no par common stock of the Porcelain Enamel & Manufacturing Company (hereinafter to be called the Porcelain Company), appraised at two dollars

a share, and eight shares of $100 par value old stock of the Porcelain Company, appraised at eight dollars a share. The other note of $3900 and accrued interest was held by the Union Trust Company of Maryland, and for its payment were pledged 100 shares of $100 par value of old stock of the Porcelain Company, which was also appraised at eight dollars a share. Beginning with January 8th, 1935, and ending with December 19th, 1936, the aggregate of all claims passed against the estate by the Orphans' Court was $49,795.21. A claim of the Porcelain Company for $9265 was withdrawn on October 28th, 1936, and this left the sum of the proved claims $40,530.21, but in this total the note of $5000 and accrued interest, which was held by defendant Herman O. Weinholt, was not included, as it had not been passed against the estate.

No further inventory nor list of debts was filed. On January 5th, 1937, the executors presented what purported to be the first and final account of the estate of their testator. According to the charges and allowances shown by the *ex parte* account, the defendant Herman O. Weinholt disposed of 2320 shares of the no par stock of the Porcelain Company at $1988.90 in excess of its appraised value; and the eight shares of the old stock of the Porcelain Company at $78.30 in excess of its appraised value. The appraised value of all the goods and chattels ($5804.00) with the gains ($2067.20) and $297.09 collected on an account made the total estate which the executors accounted for the sum of $8168.29.

The executors were allowed $5150 which Herman O. Weinholt had retained out of the proceeds of the pledged stock to pay his note. There were also allowed $588.60, which the Union Trust Company had received on its sale of the 100 shares of old stock of the Porcelain Company and the further sum of $211.40 on account of the loss on the sale of this stock below its appraised value. These allowances, with other disbursements, fees, expenses and commissions, made a total of $7235.12, and left a residue for distribution among creditors of $933.17. The di-

vidend distributed among the creditors was at the percentage of .023363. So, on its claim of $2058.10, the plaintiff Lloyd E. Mitchell, Inc., received $48.08 and the plaintiff Elise A. Grossman, on her claim of $25,500 without interest, got $595.76.

The account was verified by the oaths of the two executors, and the Orphans' Court passed an order approving the account on the day it was filed.

From that day no further accounting has been made, and no other distribution among creditors has been had, but, after the plaintiff, Elise A. Grossman, had given notice of her intention to begin the pending suit, Karl Turk, Sr., one of the executors of the estate of Heinrich Turk, notified in writing, on April 11th, 1938, the attorney of Elise Grossman that her claim was thereby disputed. The other representative, Eileen Turk, filed in March, 1938, a petition in which she alleged that she and Karl Turk, Sr., as executors of Heinrich Turk, deceased, had stated a final account on January 5th, 1937, in which was given a full and particular account of all their receipts and disbursements, and that the Orphans' Court had passed the account, and that since then no assets of any kind had come into the hands of the petitioner as such executor. The petitioner further recited that she was informed that one claiming to be an unpaid creditor of the testator intended to call upon the executors to institute suit against relatives of the decedent for the purpose of questioning the validity of the sale of certain assets in which the decedent had an interest; and that, without desiring to prejudice the rights of the claimants in the matter, the petitioner was unwilling to proceed against such relatives and asked to be relieved of her duties as executor. After certain preliminary proceedings, the petitioner was, on April 18th, 1938, relieved from any further performance.

After these preliminary statements are made, the bill of complaint alleges that at the death of Heinrich Turk the authorized and outstanding stock of the Porcelain Company was as follows:

(a) 5000 shares were authorized as 7% first preferred stock of a par value of $100 a share. Of this amount 2500 shares had been issued and 1707 shares therof retired, leaving outstanding 793 shares; and

(b) 3400 shares were authorized as 7% second preferred stock of a par value of $100 a share. Of this amount 2851 shares had been issued and 1843 shares thereof had been retired, leaving outstanding 1008 shares; and

(c) 10,000 shares of common stock, without par, were authorized.

Of this amount 9596 were issued and outstanding. Certain of these shares were represented by certificates of old common stock of a par value of $100 a share, exchangeable for four shares of the common stock without par value.

Heinrich Turk had been associated with the Porcelain Company and had been its president until approximately six months before his death, when he was summarily removed from all official position with the company. About two months before his death Turk was in financial distress. He then borrowed of his brother-in-law Herman O. Weinholt, a defendant, the sum of $5000, for which a promissory note of like amount was given on September 27th, 1934, by the decedent and his wife, Eileen Turk, with 2320 shares of no par common stock and forty-eight shares of the common stock (old) of a par value of $100 a share of the Porcelain Company pledged as collateral security. All of the shares of the no par common stock and eight shares of the common stock (old) were registered in the sole name of Heinrich Turk, but forty shares of the common stock (old) were registered in the joint names of Heinrich Turk and Eileen Turk, his wife, and the survivor of them. The note was drawn to become due on June 6th, 1935, with authority to call for additional security, and upon a failure to comply with the terms of the note authority was conferred, without further notice, to sell the collateral at public or private sale for the purpose

of satisfying the debt, with any excess or deficiency to be paid or received as the case may be.

The defendant Karl Turk, Sr., had been for many years officially connected with the Porcelain Company, and when Heinrich Turk died was a director and its president. W. Graham Boyce, a defendant, had been for a number of years before the death of Heinrich Turk a director and the secretary and treasurer of the company. At the time of the death of the decedent, he was the chairman of the board of directors. It is stated that these and the other defendants, by reason of their official positions and close relationship, were in possession of full information as to the financial position of the Porcelain Company, its present and prospective earnings, and the intrinsic value of its shares to the exclusion of all others. No published statement in reference to the condition of the company was generally available of a later date than that published on May 24th, 1934, for the fiscal year which ended on March 31st, 1934. Under these alleged conditions, it is charged that the defendants had entered into a concerted plan to acquire for their own benefit the shares of stock of Heinrich Turk, and that their efforts continued after his death until their purpose had been achieved by the methods set forth in the bill of complaint.

The will of Heinrich Turk is dated April 19th, 1934, a few days less than seven months before his death. By this instrument is indicated that the testator made his testamentary disposition in reference to a substantial estate. He devised and bequeathed all his property to the Safe Deposit and Trust Company of Baltimore as trustee to pay the net income therof to Eileen Turk during her widowhood, and, at its end, the testator directed that his estate be divided into four trusts. The income from the designated first trust to be paid to his wife until her death, and upon her death, the corpus of the trust shall fall into and become equal parts of the other three trusts. Every one of the other three trusts was for the separate use and benefit of one of his two daugh-

ters and a son, so that the income thereof should be applied by the trustee to the extent deemed necessary toward the support, education, and maintenance of such child until the age of thirty be reached, when the trust should cease and the one-third so held should become the absolute property of the particular child and beneficiary. In the event of the death of such child before the age of thirty, with or without issue, the testator made gifts over so as to cover these contingencies. Ample power and discretion were conferred on the trustee in the administration of the trusts, and the trustee was specially authorized, under prescribed conditions, to use the corpus of the trusts for the support, if need be, of the beneficiaries, and to make advances.

The surviving widow, Eileen Turk, in the effort, it is alleged, to protect her interests under the will, went to the defendant Weinholt and offered to pay his note against her and the testator in full, so as to obtain the release of the collateral, but he declined and refused to do anything in connection therewith until its due date of June 6th, 1935. She then sought information with reference to the value of the shares, and was told by the defendant W. Graham Boyce that he had been purchasing over the past year or so small lots of stock at an average price of two dollars a share. This is the appraised value in the inventory filed by the executors, and it is based upon information furnished the appraisers by the defendants, Karl Turk, Sr., and W. Graham Boyce, who did not give the said Eileen Turk, an executor and beneficiary under the will, the benefit of their knowledge of the actual condition of the company, and its reasonable business prospects.

The facts as here set forth are alleged in the first paragraphs of the bill of complaint, and the succeeding paragraphs aver the acts done in pursuance of the plan of the three defendants, Karl Turk, Sr., Herman O. Weinholt, and W. Graham Boyce, to acquire the stock of the testator for distribution among themselves at less than its actual value, to the prejudice of his general creditors

and beneficiaries under his will. The three are jointly charged with the formulation and execution of the undertaking in whose accomplishment the parties are charged with having adopted suitable means to their joint purpose. In the pursuance of their common enterprise, their acts were at times severally done, although every one was responsible for the other, and all jointly responsible, because of their common bond which united them in a single objective. Thus they are alleged to have inserted, through the defendant Weinholt, in The Daily Record, a daily newspaper of Baltimore City, largely devoted to the publication of legal opinions, of the advertisements of judicial and other sales, and of legal notices, a single advertisement of the sale on June 10th, 1935, of 2320 shares of the no par common stock, and 48 shares of the common stock, of the Porcelain Company for cash. The place of sale was in the sale room of a firm of auctioneers, and nothing was set forth in the advertisement with reference to the corporate stock of the industrial enterprise of the corporation which had issued the stock, or the place of its business, its principal office, or its financial position. No other advertisement was inserted, nor was any other method used to attract attention or to enlist the interest of investors, nor were prospective purchasers, who were known to the defendants, informed of the sale. In addition to these allegations, it is averred that on the day of sale, and at the hour and place advertised, the whole 2320 shares of the no par common stock were offered as a single lot or block and so sold, without any attempt to sell any lesser amount or in smaller units or blocks. It is stated that the widow and one Henry Evans, the representative of the brokerage firm of Stein Brothers and Boyce, were the only bidders, and the shares of stock so offered were sold to said representative for $6800, which was $1988.90 net in excess of the debt to Weinholt, and so that much beyond what Weinholt had the power to sell and give title. The forty-eight shares of the common stock pledged were not sold. These shares were represented by two certificates. The one for

eight shares was delivered to the executors as that had been issued to the decedent and the other certificate for forty shares was delivered to Eileen Turk as it was held by the decedent and Eileen Turk so as to go to the survivor.

The further averments are that the stock was not listed on any stock exchange, and the sale was purposely chilled by the insufficiency of the advertisement, by the failure to notify persons who were known by the defendants to be interested in the acquisition of the stock, and by the withholding of all information with respect to the corporation and its affairs which would tend to disclose the intrinsic value of the stock, and so induce competitive bidding by those who, if put upon inquiry by adequate notice, could seek and would obtain a knowledge of the stock's actual value, which otherwise would remain the exclusive advantage of the defendants at the time of the offer for sale. It is alleged that the defendants thus deliberately prevented a sale of the stock at its real value, and thereby caused the estate of Heinrich Turk to become insolvent.

The 2320 shares of no par stock thus sold for the lump sum of $6800 to Henry Evans are charged to have been bought by him as the mere agent and conduit of title in a succession of intermediate transfers whereby the defendants, Karl Turk, Sr., Herman O. Weinholt, and W. Graham Boyce became the owners of said shares of stock, and the same were distributed among the three of their nominees in such proportion as they had agreed, but which is unknown to the complainants, except that Herman O. Weinholt retained one-third of said 2320 shares of stock in the joint names of himself and Thekle Weinholt, his wife. It is set out in the bill of complaint that information was sought by the plaintiffs of the defendants in regard to the distribution of said block of stock, and this information was refused, but the statement was made that Karl Turk, Sr., did not hold any of such shares, but that his wife and a defendant herein, Margaret M. Turk, may have acquired certain of said

shares. The bill of complaint, however, on information received from other sources which the plaintiffs believe to be reliable, avers that the 2320 shares were divided among the defendants, and are still held by them or their nominees. In this connection, the plaintiffs allege that the defendants have steadfastly endeavored to conceal from the plaintiffs herein, and from Eileen Turk, widow, and, before her renunciation, a co-executor, the knowledge of who are the actual purchasers of the stock sold. In consequence of this conduct, it is stated that the plaintiff, Elise A. Grossman, did not know for some months that the sale had been made, notwithstanding she was the largest creditor of the testator, and was engaged in negotiations with the executors for the purpose of the establishment and satisfaction of her claim as creditor. She was not aware until some time in 1937 that defendant Herman O. Weinholt had acquired a large block of the stock of the Porcelain Company, and thereupon she had caused an investigation which, notwithstanding the obstructions interposed by the defendants, had resulted during the course of three months in the discovery of the substantial allegations of the present bill of complaint.

The complainants charge that the eight shares of the common stock of the Porcelain Company, which had been returned by Herman O. Weinholt to the executors after the payment of the note to Weinholt, were thereafter offered at public auction, after the insertion of a single advertisement of the sale in The Daily Record. The sale was on June 27th, 1935, and the stock was bought by one Harry C. Goudy at the price of $18.75 a share. The buyer is a brother-in-law of the defendant Karl Turk, Sr., and the plaintiffs aver, on information and belief, that the purchaser acted as the agent of this defendant to acquire the stock for him.

In the bill of complaint it is averred that at the death of Heinrich Turk he was the owner of 100 shares of the old common stock of the Porcelain Company which had a par value of $100 a share, and that the testator had

pledged these shares, endorsed in blank, to the said company, as collateral security for a note of $7000, dated March 31st, 1934, and payable one year after date, to the said company. One Frank Roberts was the accommodation maker of the note, for the benefit of Turk, who had endorsed the note. After the note fell due, which was after the endorser's death, the defendants, Karl Turk, Sr., and W. Graham Boyce, who were the chief executive officers of the Porcelain Company, caused the publication of a single advertisement of sale to be made in the Daily Record and sold, on July 8th, 1935, the shares at public auction for approximately $140. The stock was bought in for the Porcelain Company, and was subsequently transferred to the defendants, or some of them, but when said transfer took place and what price was paid therefor by the defendants is not known to the plaintiffs, who have sought the information, but the defendants have declined to give it on the ground that the shares did not belong to the estate of Heinrich Turk, but had been purchased from him by Roberts for the sum of $7000. The bill of complaint denies this reason is valid, and alleges that, in pursuance of the same hereinbefore described plan, the stock was purchased on behalf of the defendants, W. Graham Boyce and Karl Turk, Sr., at a wholly inadequate price. The complainants further show that the defendants decline to state whether the note empowered the Porcelain Company to purchase the securities pledged as collateral, and, on information and belief, allege that the pledgee was not so authorized.

Without going into the details stated which illustrate the value of the stock, it may be said in summary that it is further alleged that the intrinsic and actual value of the shares of stock which were sold at the three sales of June 10th, and 27th, and July 8th, 1935, within a period of a few days less than a month, was greatly in excess of the respective sums realized at such sales. It is charged that this grave inadequacy in price is attributable to the defendants, who, with full knowledge of all these facts and especially the real worth of the stock,

deliberately withheld the information they had from prospective bidders so as to enable the defendants to acquire these shares of stock at prices greatly below their real value. As a direct consequence of their concerted and successful action, the estate of Heinrich Turk became insolvent and the general creditors, including the two plaintiffs to this bill of complaint, received less than three per centum (.023363%) of their claims.

The fiducial relation of Karl Turk, Sr., as an executor of the decedent, and of Herman O. Weinholt and the Porcelain Company as holders of the stock of the decedent as collateral security for their respective demands against the decedent, were known to each other and to the defendants, Margaret M. Turk, the wife of Karl Turk, Sr., Thekle Weinholt, wife of Herman O. Weinholt, and W. Graham Boyce. The bill of complaint asserts that these defendants had full knowledge of the facts and circumstances under which the shares of stock were sold and acquired as heretofore stated; and with such knowledge united in the execution of the plan to secure the shares of stock of the decedent in the Porcelain Company at greatly less than their actual value. The time of filing the bill of complaint is explained by the secrecy and concealment practiced by the defendants, which deprived the plaintiffs of the knowledge of the material facts upon which this bill of complaint depends, until the recited facts came to their knowledge within the past three months which preceded the filing of the bill of complaint.

Eileen Turk having resigned as executrix, Heinrich Turk is the sole surviving executor, but the bill of complaint not only accuses him of maladministration, breaches of trust, and a refusal to answer pertinent inquiries with reference to the affairs of his testator's estate but also of declining to recognize any duty to perform or obligation to meet either as surviving executor or as an individual in connection with the matters and things set forth in said bill of complaint.

On the theory that the plaintiffs are without adequate relief at law, and that the adjudication of the question involved is not within the jurisdiction of the Orphans' Court of Baltimore County but is peculiarly within equitable cognizance, the plaintiffs have had recourse to a court of equity in order: (a) that every one of the defendants may be separately and together restrained and enjoined by preliminary injunction, and thereafter perpetually enjoined and restrained by permanent injunction, from selling or transferring all or any part of the shares of stock of the Porcelain Company, sold or purported to be sold on June 10th, 1935, by the defendant, Herman O. Weinholt, and purchased by or transferred to them or any of them, and now owned by them or any of them, to any person whatsoever; and (b) that the equity court assume jurisdiction over the administration of the estate of Heinrich Turk and the disposition of the assets of the said Heinrich Turk, both real and personal; and (c) that the defendants and every of them be required to discover unto the plaintiffs the full number of shares of the Porcelain Company coming into their hands which formed a part of the estate of the said decedent at the time of his death, and the circumstances under which such shares have come into their hands, the prices paid by them for such shares, and the disposition made by them of said shares; and (d) that the defendants be required to answer, but not under oath, certain numbered interrogatories attached to the bill of complaint; and (e) that the defendants and every of them be required to account to the estate of Heinrich Turk for any benefit, profit or advantage, including dividends thereon, received or to be received by them for or on account of the shares of the Porcelain Company which formed a part of the estate of Heinrich Turk at the time of his death, and the difference between the price paid and the highest intermediate value of said shares before the filing of the bill; and (f) that the court appoint a receiver to take charge of all the undistributed assets of the decedent, both real and personal, and to ad-

minister the same subject to the further order of the court; and (g) that the plaintiffs may have such relief as their case may require.

The demurrer of the defendants is combined with an answer in which the defendants deny the material allegations upon which the equity of the plaintiffs depends. With the issues of fact thus raised by the denials of the answer, the chancellor had no concern, in disposing of the question presented by the demurrer. In electing thus to plead, the defendants must be taken to admit, for the purpose of the demurrer, the well pleaded averments of fact as contained in the bill of complaint, and, upon this assumption of their verity, this court is limited on these appeals to the determination of the legal sufficiency of the facts so averred, and thus accepted by the defendants as true, to show equitable grounds for the relief prayed.

The effect of the facts averred in the text of the bill of complaint, and shown by the exhibits which are filed as a part of the bill, is clearly and definitely to charge a combination of three closely associated men with the common plan to procure, through their joint and concerted action, all of the shares of stock of a testator in a corporate enterprise at less than their fair actual value, although this involved loss to the testator's creditors and the defeat of his testamentary design. The plan was a breach of fiducial duty by every one of the three. One of them, Herman O. Weinholt, was the pledgee of 2320 shares of the no par common stock; a second, Karl Turk, Sr., was one of the executors of the testator's will and, also, the president of the Porcelain Company, which was the pledgee of 100 shares of its old common stock of a par value of $100 a share on a loan of $7000; and the third, W. Graham Boyce, was the chairman of the board of directors and secretary and treasurer of the Porcelain Company, the pledgee. Weinholt sold 2320 shares of the no par stock as a unit for $6800, or about $2.93 a share; the executors sold eight shares of the old common stock for $150 or $18.75 a share; and the Porcelain

Company, through its executive officers, Karl Turk, Sr., and Boyce, sold 100 shares of the old common stock for $140 or $1.40 a share. All these shares are charged to have been sold directly or indirectly to the three conspirators who profitably divided the shares among themselves or their nominees, with notice. The contracts did not authorize the pledgees to buy the stock pledged.

The methods employed to acquire the stock are described in the bill of complaint, and embrace inadequate notice and an insufficient advertisement of stock, with nothing but its corporate name to identify the corporation, its place of business and the nature of its industry, and the neglect either to seek bidders or to advise interested parties, so as to invite competition; or to supply information of the financial position, earning capacity and volume of present and prospective demands for the product manufactured. In short, the conduct of the parties in their management in relation to the sale was not such as any reasonable prudent and diligent person would have followed in an effort to sell, under similar circumstances, his own shares of stock to the best advantage. The stock was offered and bought at every sale in one entire lot. No opportunity was afforded to purchase in separate lots, although the sale of 2320 shares of no par stock for $6800 was largely in excess of the debt for which the shares were pledged. The shares of stock were susceptible of division and the pledgee had no power to sell any greater number of shares than was necessary to pay his debt and the reasonable expenses of the sale. *Jones on Collateral Securities*, 3rd Ed., secs. 633, 739.

On the allegations made, and admitted by the demurrer, the sales were not fairly made and carefully conducted with impartial attention to the interest of all the parties concerned, but were so contrived as to advance the interests of the three defendants at the expense of the general creditors of the testator and his estate. *Bon v. Graves*, 216 Mass. 440, 446, 103 N. E. 1023; *Winchester Rock etc. Co. v. Murdough*, 233 Mass. 50, 123

N. E. 344; *Jennings v. Moore,* 189 Mass. 197, 75 N. E. 214; *Whitman v. Boston Terminal Refrigerating Co.,* 233 Mass. 386, 124 N. E. 43; *Bell v. Webb & Mong,* 2 Gill 163; *Spindler v. Atkinson,* 3 Md. 409.

In addition, at the sales respectively made by them in their several fiducial capacities, the three defendants secretly bought for their own private account, through agents of themselves as the undisclosed principals, all the shares of stock of the decedent at prices which, because of the opportunities and advantages afforded by their fiduciary capacities and by the interchange of their several information, they alone knew were much less than the fair actual value of the shares of stock at the times of their sales. So recently as *Harlan v. Lee,* 174 Md. 579, at pages 591-593, 199 A. 862, at page 868, this Court said:

"The general rule is that a conventional or judicial fiduciary with power to sell may not buy, either directly or indirectly, for his own benefit, or as agent for a third person, at a sale made in his fiducial capacity. The rule is founded on sound considerations of public policy, and is well supported by practical experience. Confidence in the loyalty and impartiality of a fiduciary is not maintained by one who is at once the seller and the buyer of the subject of sale. Furthermore, the danger of fraud or collusion is so great and there is such advantage in concealment and such difficulty of detection, exposure and establishment by evidence that the rule is supported by weighty considerations of policy. *Perry on Trusts,* (7th Ed.), secs. 770, 194-199, 209, 602V, 602W; *Miller's Equity Proc.,* sec. 493, sec. 508, p. 601.

"The effect of the rule is that should the sale be made to the purchaser as the agent of the executor in his private capacity, the law does not denounce the sale as fraudulent in fact or make it absolutely void, but voidable on objection by a party in interest. *Perry on Trusts,* (7th Ed.), secs. 197-198. *Supra, Richardson v. Jones,* 3 G. & J. 163, 184; *Conway v. Green's* Admr. 1 H. & J. 151; *North Baltimore Bldg. Assn. v. Caldwell,* 25 Md.

420, 423; *Smith v. Townshend,* 27 Md. 368; *Pairo v. Vickery,* 37 Md. 467, 485; *Fidelity & Deposit Co. v. Freud,* 115 Md. 29, 33, 80 A. 603; *Sessions v. Casey,* 141 Md. 312, 313, 315, 118 A. 759; *Eichelberger v. Hawthorne,* 33 Md. 588, 592; 3 *Bogert on Trusts and Trustees,* sec. 484.

· "Notwithstanding the importance of the rule and the salutary effect of its rigid enforcement it is not of universal application. *Williams' Excrs. v. Marshall,* 4 G. & J. 376, 379. Thus, the rule is not applicable if the purchase be made to protect the interests of the *cestuis que trustent* (*Spindler v. Atkinson,* 3 Md. 409, 423, 424); or with the agreement of the *cestuis que trustent* if these be fully advised of their interest and rights and have adequate knowledge or information of the relevant and material circumstances of the matter (*Shockett v. Tublin,* 170 Md. 117, 126-127, 183 A. 521; 3 *Bogert on Trusts and Trustees,* sec. 484, p. 1521); or if the *cestuis que trustent* be barred from their right to avoid the sale by subsequent ratification, acquiescence, or laches (*Mason v. Martin,* 4 Md. 124, 134-137; *Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co.,* 16 Md. 456, 508; *Read v. Reynolds,* 100 Md. 284, 292, 293, 59 A. 669; *Love v. Rogers,* 118 Md. 525, 523, 533, 85 A. 771; *Whitelock v. Dorsey,* 121 Md. 497, 502, 88 A. 241; *Hammond v. Hopkins,* 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134); or if the fiduciary be authorized by statute, by the instrument creating the trust, or by the court having jurisdiction of the subject matter, provided the sale be fairly made. 3 *Bogert on Trusts and Trustees,* sec. 484, pp. 1521, 1522; Code, art. 66, sec. 14."

See *Bortner v. Leib,* 146 Md. 530, 545, 546, 126 A. 890; *Schockett v. Tublin,* 170 Md. 117, 183 A. 521; *Hill v. Pinder,* 150 Md. 397, 414, 133 A. 134; *Maryland Fire Ins. Co. v. Dalrymple,* 25 Md. 242, 264; *Baltimore Marine Ins. Co. v. Dalrymple,* 25 Md. 296; *North Baltimore Building Assn. v. Caldwell,* 25 Md. 420; *Korns v. Shaffer,* 27 Md. 83; *Manning v. Shriver,* 79 Md. 41, 28 A. 899; *Macgill v. Macgill,* 135 Md. 384, 109 A. 72; *Jones*

*on Collateral Securities* (3rd Ed.), secs. 631 b, 726, 727, n. 28; *Clark v. Simmons,* 150 Mass. 357, 23 N. E. 108; *McKee v. Smith,* 219 Pa. 490, 68 A. 1026.

While the three male defendants are stated to have been the chief actors in what has been alleged, both Margaret M. Turk, wife of Karl Turk, Sr., and Thekle Weinholt, wife of Herman O. Weinholt, are properly united as defendants since these defendants, with full knowledge of all the circumstances, have had some of the stock assigned to them either severally or as joint holders with their respective husbands, and, by reason of these transfers, they are necessary parties in order that they may be bound by the decree, and full relief may be extended and the rights of the parties fully protected. *Jones on Collateral Securities,* (3rd Ed.), sec. 741; *Reddington v. Lanahan,* 59 Md. 429, 438-440.

It is argued that relief may be had at law in an action of trover and conversion, and, therefore, equity has no jurisdiction to entertain the suit. The contention ignores the fundamental nature of the facts presented and the procedure requisite for full and adequate relief. The gravamen of these facts is fraud, whose redress is peculiarly of equitable cognizance. Furthermore, the procedure indicated is for a discovery and accounting in matters which require for their resolution the flexible and adaptive remedies of equity rather than the more rigid and limited processes of the law. Not only is discovery a form of the auxiliary jurisdiction in equity, but, in the present suit, the bill seeks both discovery and relief in a cause which is based upon a breach of trust or duty, and an appeal to the conscience of the several defendants becomes necessary for a discovery of those matters which are involved in the breaches charged and are peculiarly within the cognizance of the defendants as fiduciaries. *Bispham on Equity,* (8th Ed.), secs. 35, 565; *Union Passenger R. Co. v. Baltimore,* 71 Md. 238, 240, 242, 17 A. 933; *Miller's Equity Proc.,* pp. 29, 30, 838, 839; *Bortner v. Leib,* 146 Md. 530, 540, 545, 126 A. 890.

Again, as a result of the wrongful sales of the shares of stock, and of the fact that the stock is not listed on the stock market but is an inactive stock, closely held by a few owners, the real value of the shares will largely depend upon a corporate accounting and analysis of its affairs as of the period of the sales, and, upon an informed reading and appraisal of the corporate condition as thus ascertained and reflected, the real worth of the shares of stock must be adjudged. The bill of complaint shows that dividends have been received, so, again, an accounting must be taken and had, and a further necessity for equitable relief is shown. *Jones on Collateral Securities,* (3rd Ed.), secs. 741, 742. The dividends declared were on all the shares of the block of stock sold by the defendant Weinholt. Since, even on the alleged inadequate price obtained, he sold as pledgee many more of the shares than were necessary, and apportioned them among his confederates and himself, and their and his nominees with notice, the plaintiffs are entitled to have, at the least, these excess shares of stock returned, with the dividends thereon, or if this be not practicable, their equivalent in money, for the benefit of the estate of the testator so that his creditors and beneficiaries may have the proper application made. *Fowle v. Ward,* 113 Mass. 548; *Union Pass. R. Co. v. Baltimore,* 71 Md. 238, 17 A. 933; *Macgill v. Macgill,* 135 Md. 384, 393, 394, 109 A. 72.

The rights of the creditors in the shares of stock are not founded in legal title or right of possession, but they are wholly derivative and equitable. As such creditors, they could not maintain an action at law in trover and conversion. Nor may the acting executor bring such an action against himself as a defendant for a wrongful conversion.

From these and other considerations, it is obvious that a suit in equity, and not an action at law, affords the only adequate and proper relief on the facts alleged. *Supra.* See 1 *Poe, Pl. & Pr.,* secs. 216, 217, 219; *Boland v. Ash,* 145 Md. 465, 474-478, 125 A. 801; *Hill v. Pinder,*

150 Md. 397, 414, 415, 133 A. 134; *Bortner v. Leib,* 146 Md. 530, 545, 546, 126 A. 890.

A second ground of demurrer is that general unpaid creditors of the testator do not have the right to bring the suit. Normally the executor or administrator as the personal representative of the decedent is the proper party, so far as personality is concerned, to bring the action at law or suit in equity in matters which relate to the estate. The general rule is subject, however, to some exceptions and limitations, as where the rights of a legatee, devisee or creditor are substantially affected by peculiar circumstances, as fraud or collusion on the part of the personal representative and the person against whom the suit is brought; and the refusal or inability of the representative to act. Equity in such instances does not permit the general rule to interfere with its paramount function to prevent a fraud and provide a remedy and an actor for its correction.

On the accusations here made the sole acting executor of the decedent collusively combined with two other persons to defraud the estate of his testator by the covert acquisition of a large number of shares of stock of his testator at much less than their fair actual value. After this fraudulent plan was executed, a purporting first and final account was settled in decedent's estate in conformity with the fraudulent scheme and an insignificant amount was distributed in a small dividend among the decedent's creditors, so that the claims of the plaintiffs here remain unpaid and unsatisfied to their large and material loss. The acting executor declines to recognize any liability on the part of himself and his associates, and the plaintiffs are without redress, except through equitable relief undertaken by themselves. Under such circumstances the general rule is not applicable and the creditors may sue for the protection of the estate. *Boland v. Ash,* 145 Md. 465, 125 A. 801; *Noel v. Noel,* 173 Md. 147, 195 A. 322; *Id.,* 173 Md. 152, 195 A. 315; *Anderson v. Goodwin,* 125 Ga. 663, 54 S. E. 679, 682; *Jones' Excrs. v. Clark,* 25 Grat. 642, 66 Va. 642; *Ravenscraft v.*

*Pratt*, 22 Kan. 20; *Bennett v. Bennett's Admr.* 134 Ky. 444, 120 S. W. 372; *Burroughs v. Elton*, 11 Ves. Jr. 29, 23 Eng. Reprint 998; *Lancaster v. Evers*, 4 Beav. 158, 49 Eng. Reprint 299; *Kinard v. George*, 142 Ga. 111, 82 S. E. 560; *Randel v. Dyett*, 38 Hun, N. Y., 347; *Buchanan v. Buchanan*, 75 N. J. Eq. 274, 71 A. 745; *Spencer v. Goodlett*, 104 Tenn. 648, 58 S. W. 322; *Reager's Admr. v. Chappelear*, 104 Va. 14, 51 S. E. 170; *Trotter v. Mutual Reserve Fund Life Assn.*, 9 S. D. 596, 70 N. W. 843; *Tillery v. Tillery*, 155 Ala. 495, 46 So. 582; *Squire v. Ordemann*, 194 N. Y. 394, 87 N. E. 435; 11 *R. C. L.* pp. 262, 263; 24 *C. J.* pp. 796-797, 808-809; *Woerner on American Law of Administration*, (3rd Ed.), vol. 2, p. 1017; *Pomeroy's Eq. Juris.* (4th Ed.), vol. 3, sec. 1154, pp. 2733-2734; 4 *Ann. Cas.* 194-197; 20 *Ann. Cas.* 95; 22 *L. R. A., N. S.*, 454.

A third contention is that the bill of complaint is multifarious as to subject matter and as to parties. The plaintiffs are the unpaid common creditors of an estate of a decedent and they seek to obtain from the defendants an accounting for certain assets of the estate in the form of shares of corporate stock in a single corporation, which the decedent had pledged to secure his indebtedness, and which three of the defendants had collusively combined for the common purpose, through their united efforts and planning, and fiducial knowledge and advantage, to acquire and obtain at a much lower price than they knew was the fair actual value of the shares of stock. Acting covertly and through divers agents, they acquired, at three different sales, but pursuant to a single common plan and purpose, all of the coveted shares of stock at less than their fair actual value, and then divided among themselves and their nominees, according to their common agreement, and with full knowledge or notice on the part of their nominees, the wives of two of the defendants, of the facts and circumstances. The consideration that every one of the three confederates was a fiduciary, but in a different capacity, and that their objective was attained by purchases at three sales by separate

agencies, does not destroy the fundamental and enduring unity of purpose, plan and execution, since everything was done as part of a single, consistent and common undertaking to which every one was bound in co-ordinated action and interest.

The primary object of the three defendants was to secure all of the shares of the stock of the decedent in the Porcelain Company. Every share of the old common stock was convertible into four shares of the new no par value common stock, so that when expressed in the common denominator of new stock, the estate was the owner of 3152 shares of the common stock, which constituted one-third of all the outstanding common stock of the Company. The single objective of the three confederates was to acquire these shares at a low price in fraud of the estate. Hence the different methods employed to attain their precise end with reference to the several blocks of stock which formed the whole lot would not affect the privity of the parties concerned, nor make the subject matter several and distinct. Neither would the distinct origin and varying degree of their several fiduciary capacity and the measure of the liability assumed under particular situations make the bill multifarious, because the combination to defraud bound all matters in the requisite unity of purpose and objective. *Wilson v. Wilson,* 23 Md. 162; *Scher v. Becker,* 163 Md. 199, 205, 161 A. 167; *Standard Founders v. Oliver,* 168 Md. 317, 339, 340, 178 A. 223; *Beachey v. Heiple,* 130 Md. 683, 101 A. 553; *Boland v. Ash,* 145 Md. 465, 125 A. 801. The women defendants are charged with holding interests in the stock under transfers made to them by their husbands with notice of the facts. *Supra; Noel v. Noel,* 173 Md. 152, 161-165, 195 A. 315; *Id.,* 173 Md. 147, 151, 195 A. 322; *Atlantic Lumber Corp. v. Waxman,* 162 Md. 191, 196, 159 A. 593; *Wlodarek v. Wlodarek,* 167 Md. 556, 175 A. 455.

Thus every one of the parties defendant appear from the allegations to have a substantial interest in some of the connected and related material matters which are the

subject of the suit in which is sought to be enforced the common and general right of beneficiaries and creditors to an accounting from fiduciaries for their collusive breaches of duty in the execution of a concerted plan with one another covertly to acquire, at much less than their value, certain shares of stock of which they were the several fiduciaries. *Supra.* Here are all the elements for the undoubted jurisdiction of a court of equity, without the vice of multifariousness. *Supra; Phelp's Juridicial Equity,* secs. 42, 43; *Bispham's Principles of Equity,* (8th Ed.), sec. 484; *Neal v. Rathell,* 70 Md. 592, 598, 599, 17 A. 566.

The defendants mention, but do not stress, the further objection that, as letters testamentary on the estate of Heinrich Turk were granted in Baltimore County, the proper court of equity to take over the further administration of the estate of the testator is the Circuit Court for Baltimore County, sitting as a court of equity. While the bill of complaint does pray for the relief that the Circuit Court of Baltimore City assume jurisdiction of the further administration of the estate of the testator, this is only a part of the relief sought. The principal equity is for an accounting, with incidental discovery, by fiduciaries in order that the rights of the estate may be secured and enforced for the benefit of the unpaid and general creditors of the testator, and, incidentally, for the protection of the beneficiaries under the trust declared by the will. There may be no question that the plaintiffs are entitled to this relief on the allegations made. *Supra.* The demurrer is general, and, therefore, should it be held that the plaintiffs are not entitled to have the further administration of the estate of the decedent conducted under the jurisdiction, supervision and control of the Circuit Court of Baltimore City as contemplated by one of the prayers for relief, nevertheless the demurrer would fail because of the right of the plaintiffs to the other relief of accounting. The demurrer must be considered as a whole, and of necessity should be overruled. *Miller v. Baltimore Marble Co.,* 52 Md.

642, 646; *Dennison v. Yost,* 61 Md. 139, 142; *Hogan v. McMahon,* 115 Md. 195, 205, 80 A. 695.

As has been seen, there can be no question that the allegations of the bill of complaint establish the cause as one for which the limited jurisdiction of the orphans' court is inadequate to afford ample and complete relief, and resort must be had to the general, broad, and sufficient principles and procedure of equity to secure the assets of the estate. *Supra; Bispham's Principles of Equity,* (8th Ed.), sec. 484; *Boland v. Ash,* 145 Md. 465, 125 A. 801; *Noel v. Noel,* 173 Md. 147, 195 A. 322; *Anderson v. Curran,* 155 Md. 538, 142 A. 719; *Gaver v. Gaver,* 176 Md. 171, 4 A. 2nd 132; *Alexander v. Leakin,* 72 Md. 199, 19 A. 532; 3 *Pomeroy's Equity Juris.* (4th Ed.), sec. 1154, pp. 2702-2704.

Nor is this general jurisdiction of equity over accounts of fiduciaries, trusts, and other fiducial relations, in connection with a decedent's personality, confined to the court of equity having territorial jurisdiction within the county or Baltimore City where a decedent was a resident at his death, and where his personal estate is in course of administration. In the cause under consideration, the defendants all reside in Baltimore City, with the exception of one who resides in Baltimore County. The sole acting personal representative of the decedent resides in Baltimore City and he may be sued there in his own or in his representative capacity, as is specifically provided with respect to his representative capacity by the last clause of section 158 of article 75 of the Code, wherein it is declared an executor,—and so an administrator, by virtue of section 5 of article 1 of the Code,— "may be sued either in the county where he resides or where he obtained administration." *Bonaparte v. State,* 63 Md. 465, 474; *Hopper v. Brodie,* 130 Md. 443, 444, 100 A. 644.

All the defendants have appeared in the cause and filed a combined demurrer and answer. Thus, with jurisdiction of the general subject matter or breach of a fiduciary duty and of the parties in a transitory action, the ques-

tion suggested is narrowed to the inquiry whether, in the event the primary purpose of discovery and accounting shall result in a decree of compensatory restitution against the defendants for wrongful conduct in the sale of the stock for less than its fair actual value, the funds or shares of stock thus recovered either may be administered and distributed by way of auxiliary and subsidiary relief among the parties entitled in the pending equity cause under the direction and control of the Circuit Court of Baltimore, or shall be transferred for administration by the Orphans' Court of Baltimore County or by the Circuit Court for Baltimore County, sitting as a court of equity, if the last named court has assumed jurisdiction of the administration of the estate of the decedent.

After assets of an estate have been recovered and reduced to possession, they are equitably appropriated to the uses of that estate. So, as was said in *Baker v. Cooper*, 166 Md. 1, at page 14, 170 A. 556, at page 561: "The personal assets of a testator or intestate are impressed with a trust to pay the debts of the decedent, which an unpaid creditor has a right to have administered for his benefit. It is upon the ground of such a trust that the jurisdiction of a court of equity primarily rests in the administration of the estate, and in bills brought against executors, administrators, or, after delivery or payment, against legatees or distributes for the purpose of charging them with a liability to have applied the personal assets of the decedent received to the payment of his debts."

The assets thus recovered and in possession of equity await their ultimate application and distribution in accordance with the terms of the trust with which it is affected. The recovery of the fair actual value of the shares of stock which have been collusively sold to fiduciaries at an under-value when a higher price might have been obtained is the principal equity upon which the bill of complaint is founded, and should the creditors establish by proof of the allegations which the defendants have

admitted for the purpose of the demurrer, and should the losses occasioned be recovered after decree, the amount of the assets thus restored, when reduced by the costs and expenses incident to the recovery, will constitute a trust fund for the benefit not only of the plaintiffs but also of all the other creditors of the decedent, and, thereafter, if there be a residue, for ratable distribution among the parties entitled under the testator's will. *Dexter v. Arnold,* 7 Fed. Cas. No. 3855, page 530, 3 Mason 284; *Sharp v. Citizens' Bank,* 70 Neb. 758, 762, 98 N. W. 50; *Gunter v. Gunter,* 2 S. C. 11; *Colton v. Field,* 131 Ill. 398, 22 N. E. 545; *Jenkins v. Edens,* 12 B. Mon. 239, 51 Ky. 239; *Rains v. Rainey,* 11 Humph. 261, 30 Tenn. 261; *In re Weed's Estate,* 163 Pa. 595, 30 A. 272.

As a general rule, the fund and assets thus procured would be delivered to the personal representative of the decedent for distribution among the parties entitled by the personal representative under the jurisdiction, direction and control of the Orphans' Court of Baltimore County where letters testamentary, or of administration, were obtained. The general rule, however, is subject to the limitation that a court of equity which has discharged its primary function of the recovery of the assets of the estate may, in the exercise of a sound discretion, retain its jurisdiction, and proceed to administer complete relief and do entire justice with respect to the subject matter by the incidental distribution of the funds among the parties entitled, should this course avoid delay, costs, and expenses, or a multiplicity of procedure, and be necessary for the purpose of justice and the protection of all the parties concerned or in interest. If such conditions exist, the court may well conclude that, notwithstanding the administration of a decedent's estate of personality is generally the providence of the orphans' court, the special circumstances of the case make it one where for the purpose of justice the court of equity should retain its jurisdiction and conclude the administration of the estate. This decision, however, will ultimately depend upon the development of the facts and

the conditions at the time there are assets for distribution as a result of these proceedings. *Phelps' Juridical Equity*, sec. 179 (3), pp. 260-262; *Boland v. Ash*, 145 Md. 465, 477, 478, 125 A. 801; *Jenks v. Clay Products Mfg. Co.* 138 Md. 551, 572, 115 A. 123. See *Poe. v. Munich Re-insurance Co.* 126 Md. 520, 432, 533, 95 A. 164; *Middle States Loan, Bldg. &. Const. Co. v. Hagerstown Mattress Upholstery Co.* 82 Md. 506, 516, 33 A. 886; *Koontz v. Koontz*, 79 Md. 357, 363, 364, 32 A. 1054; *Hoffman & Flack, Admrs. v. Gosnell*, 75 Md. 577, 591, 24 A. 28; *Alexander v. Leakin*, 72 Md. 199, 202-205, 19 A. 532; *Bouldin v. Reynolds*, 50 Md. 171, 174, 175; *Pomeroy's Equity Juris.*, (4th Ed.), secs. 181, 235.

For the reasons stated, the demurrer to the bill of complaint was properly overruled, which leaves questions of fact at issue to be decided upon the testimony to be offered by the respective parties.

The final question for consideration is the demurrer of the plaintiffs to the answer of the defendants to paragraph 22 (c) of the amended bill of complaint. After overruling the demurrer to the bill of complaint, the next pleading for consideration by the chancellor was this demurrer to the answer. The chancellor held this demurrer bad. This was error, as the pleading was argumentative and not responsive to some of the material allegations. The answer must reply to those pertinent matters which are peculiarly within the knowledge of the defendants. The failure to do this is the vice of the pleading. On this point there must be a reversal. *Miller's Equity, Proc.* sec. 155, p. 197, n. 5; sec. 157, pp. 200-201, n. 2; *Coan v. Consolidated Gas etc. Co.* 128 Md. 530, 97 A. 921.

> *Order overruling demurrer in No. 42 Appeals is affirmed; and order overruling demurrer in No. 43 Appeals reversed, and cause remanded for further proceedings; the costs to be paid by the appellants in No. 42 and by the appellees in No. 43.*